*In re* MARRIAGE OF MARIA PEDERSEN, Petitioner-Appellee, and GLENN PEDERSEN, Respondent-Appellant.

Second District   No. 78-576

Opinion filed November 1, 1979.

Thomas Howard, of Chicago, for appellant.

Michael R. Galasso, of Lombard, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Petitioner, Maria Pedersen, brought this action to dissolve her marriage to respondent, Glenn Pedersen. The trial court dissolved the marriage and subsequently entered an order with respect to the property rights of the parties. The latter order gave petitioner sole and exclusive ownership of her wedding ring, awarded her $5,000 from the proceeds of the sale of the marital residence as reimbursement for her "special equities," and ordered respondent to pay $2,000 for petitioner's attorney's fees. This appeal followed.

Glenn and Maria Pedersen were married on October 23, 1976. Prior to this marriage Maria was the owner of what had been the marital residence from a former marriage. That property was sold for $18,200 before her marriage to Glenn, and the proceeds were deposited in a savings account in Maria's name. This savings account was converted to a

joint account after the parties were married, and Glenn then made a deposit of $8,354 from the sale of his former residence and $826 from the settlement of his Workmen's Compensation claim. The parties transferred funds from this joint account to Glenn's business account for the purpose of making various expenditures, including a down payment on a townhouse, which they purchased for $51,000.

Maria filed a complaint for divorce in late December 1976, approximately two months after the marriage. The parties thereafter attempted a reconciliation, which was unsuccessful, and the trial court entered a judgment for divorce on March 29, 1978. A hearing was held concerning the distribution of the marital property, and on June 12, 1978, the trial court issued the first of three letters of opinion. This letter summarized the parties' finances, reciting that the $5,000 "wedding ring" had been purchased after they had pooled their individual resources. This letter also stated that Maria was entitled to a special equity in the proceeds of the sale of the marital home and concluded that Glenn should pay Maria's attorney $2,000 for her attorney's fees. In a second letter dated July 3, 1978, the trial court found that the ring in question had been a gift to Maria and was nonmarital property in which Glenn had no interest. The trial court also rejected Glenn's argument that since a portion of the attorney's fees in question had been discharged by the bankruptcy of both parties in 1977, the award of $2,000 for those fees was improper. The provisions of both of these letters were incorporated into formal orders of the court. The trial court's third letter, dated September 15, 1978, was issued in response to respondent's motion to vacate one of those orders, based on a claim that Maria had lied under oath when she testified that she was unemployed. It stated that "the employment or lack of employment by the petitioner did not enter into my consideration" in the distribution of the marital assets. The motion to vacate was accordingly denied.

■■ We first address respondent's contention that the trial court erred in awarding Maria sole ownership of the ring. Although referred to as a wedding ring by various documents in the record, testimony established that it was a $5,000 engagement ring purchased with funds from Maria's savings account. While the trial court's first letter of opinion described the ring as having been acquired by the parties after pooling their individual resources and the second letter took the position that the ring was a gift, the court concluded that the ring was Maria's nonmarital property. The only testimony offered in this regard established that the ring was acquired prior to the marriage solely from the proceeds of Maria's savings account. In light of these facts, we view Maria's isolated statement that "we bought a ring" as insufficient to indicate that Glenn contributed toward its purchase. The quoted words import at most that Glenn was present when the ring was purchased and assisted in its selection. We

therefore hold that the trial court properly classified the ring as nonmarital property and awarded it solely to Maria.

■■ ■ The second issue raised on this appeal is whether the trial court properly awarded Maria $5,000 as a special equity in the proceeds of the sale of the marital residence. Respondent contends that this award was erroneous, as the concept of special equities as embodied in the former Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 18) is no longer recognized in Illinois. Respondent also contends that the trial court erred by failing to consider Maria's employment or lack of employment as it might relate to the question of property distribution. We agree with respondent that the former concept of special equities is not provided for in the new Illinois Marriage and Dissolution of Marriage Act but, nevertheless, conclude that the trial court's award was proper. In dividing marital property, the court is required to consider the factors enumerated in subsection 503(c) of the new Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)), including the contribution of each party in the acquisition of the property, the duration of the marriage, the relative economic circumstances of each spouse and such factors as the parties' occupation, income, vocational skills and employability. The marital residence in the instant case was purchased shortly after the marriage with proceeds from an account to which Maria had contributed over $13,000 and Glenn had contributed over $8,000. In view of the short duration of the marriage, we do not believe that the trial court abused its discretion in awarding Maria a share of the proceeds of the sale of the marital home which reflected the amount by which her contribution to its purchase exceeded Glenn's. Although the trial court expressed its conclusion in terms of the former concept of special equities, we believe that its holding was correctly based on the criteria set forth in the current statute. Respondent has drawn our attention to the statement in the trial court's September 15, 1978, letter of opinion that Maria's employment status was not considered in the division of the marital property. Read in context, this statement does not demonstrate that the trial court disregarded the occupation and relative economic circumstances of the parties, but only that in view of all the factors which it considered Maria's employment or lack thereof was not deemed of particular significance. We therefore conclude that the second error assigned is without merit.

■ We turn finally to respondent's contention that the trial court erred in its award of attorney's fees. We reject at the outset the argument that Glenn's obligation for these fees was discharged in bankruptcy on February 7, 1978. As we determined in *King v. King* (1978), 57 Ill.. App. 3d 423, 373 N.E.2d 313, attorney's fees awarded in a divorce decree are in the nature of alimony and are therefore not dischargeable in bankruptcy. Respondent's assertion that attorney's fees are dischargeable where the

dissolution decree does not provide either for maintenance or child support is contrary to *King v. King* and is not supported by the authorities upon which respondent relies.

■■ The award of attorney's fees in connection with an action for dissolution of marriage is governed by section 508 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 508), and is left to the sound discretion of the trial court, reversible only for an abuse of that discretion. (*Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.) The general rule is that to justify the allowance of attorney's fees the party seeking relief must show financial inability to pay and the ability of the other spouse to do so. Among the factors also to be considered are the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of the responsibility involved, the standing or skill of the attorney employed and the time and labor involved. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) In determining the issue of attorney's fees, the trial court had before it evidence as to the financial circumstances of the parties, revealing that Maria was employable and possessed resources from which to pay her attorney. Also before the court was the stipulation of the parties that Maria's attorney had spent 80 to 90 hours on this case, and that the customary rate for such services is $50 per hour.

■■ On consideration of the entire record we conclude that the trial court abused its discretion in ordering Glenn to pay $2,000 toward Maria's attorney's fees. More must be shown to justify an award of fees than a compilation of hours and an hourly rate. (See *Tippet v. Tippet* (1978), 65 Ill. App. 3d 1018, 383 N.E.2d 13.) We note too that Maria also had her debts discharged in bankruptcy on February 7, 1978, including her existing obligations for her attorney's fees. The record fails to indicate the extent to which that discharge affects her total obligations to her attorney, and fails to address the possibility that Maria might subsequently have reaffirmed those obligations. While we thus reverse the trial court's award of fees, we remand the cause to the trial court for further hearing on the allowability and amount, if any, of attorney's fees in this case, consistent with the principles set out in this order.

Affirmed in part, reversed in part and remanded.

LINDBERG and SEIDENFELD, JJ., concur.