*In re* MARRIAGE OF IRENE BENTLEY, Petitioner-Appellant, and GEORGE BENTLEY, Respondent-Appellee.

First District (1st Division)    No. 79-105

Opinion filed February 11, 1980.—Rehearing denied March 10, 1980.

Charlotte Adelman, of Chicago, for appellant.

Rosaland M. Crandell, of Crandell and Hoag, of Evanston, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The petitioner, Irene Bentley, appeals the property distribution that was entered as part of the judgment dissolving her marriage to the respondent, George Bentley. The petitioner contends that the trial court abused its discretion and did not consider the relevant factors pursuant to sections 503(c) and 504(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, pars. 503(c), 504(b)), in distributing the marital and nonmarital property, and in apportioning the maintenance award. For reasons stated below, we affirm.

The judgment in dissolution of marriage, entered on October 18, 1978, was granted to the petitioner on grounds of mental cruelty. The petitioner and the respondent had been married 27 years and were 51 and 63 years of age respectively when the marriage was dissolved. They had two sons who are now adults. The marital home, located in Prospect Heights, Illinois, was valued from between $64,000 and $76,000. According to the provisions of the property distribution, the marital home would be repaired with the 1977 income tax refund in the amount of $500 and then sold. The court ordered the $8,500 mortgage balance paid from the proceeds of the sale and the remainder distributed 40% to the respondent and 60% to the petitioner.

The respondent was employed as an account supervisor with an advertising agency and his net income from this job was approximately $250 per week. The respondent had been unemployed prior to obtaining his job with the advertising agency, and he had incurred $8,000 in debts during this time to pay the household expenses. Under the terms of the property settlement, the respondent was required to pay the $8,000 debt out of his share of the marital award, and also to pay the petitioner maintenance in the amount of $40 per week for two years.

The petitioner, on the other hand, had been a housewife, though she had worked occasionally during the early years of the marriage. At the time of dissolution the petitioner had obtained part-time employment as a babysitter and earned $20 per day.

The petitioner in the dissolution proceedings contested the award of the house located in Homewood, Illinois to the respondent. This property, valued at $42,000, was purchased by the respondent from Margaret Doorley, whom the respondent claimed raised him. The facts surrounding the purchase of the house are as follows: the petitioner telephoned the respondent who was then in California, and informed the respondent of an attempt by Mrs. Doorley's niece to place Mrs. Doorley in a nursing home. From the record it appeared that Mrs. Doorley and her niece were estranged, and that Mrs. Doorley frequently communicated with the petitioner and the respondent. The respondent subsequently returned to Illinois, and along with the petitioner, met with Mrs. Doorley

to discuss the purchase of the house. On October 3, 1975, the respondent purchased the house from Mrs. Doorley for $10.

Mrs. Doorley was an elderly lady, and during the proceedings herein suffered a stroke and was placed in a nursing home by the petitioner and the respondent shortly before the entry of the judgment herein. The respondent was asked during the proceedings that, if necessary, would he sell the house to pay for Mrs. Doorley's nursing home bills. The respondent stated that he intended to sell the house and use the proceeds of the sale to pay for her nursing bills, and that he would take care of Mrs. Doorley for as long as she lived. Mrs. Doorley died February 7, 1979, approximately four months after the entry of the judgment herein, and it appeared from the testimony of respondent that Mrs. Doorley allowed the respondent to purchase the house for such a small consideration in return for the respondent's obligation to provide for her in the event she needed money.

The petitioner also contested the award of a cut glass set valued at $2,000 and which consisted of a bowl, two trays, and a clock. The petitioner stated that Mrs. Doorley gave the set to the parties as a gift and was therefore marital property; whereas, the respondent testified that it was given to them for safekeeping, and thereby nonmarital property. The trial court awarded the cut glass set and the house to the respondent as nonmarital property.

The remainder of the assets was disposed of in the following manner: the respondent was required to provide the petitioner with medical coverage for one year and to designate the petitioner beneficiary of his Veteran's Administration insurance policy valued at $10,000.

The petitioner contends that the trial court erred in the disposition of the marital assets and nonmarital assets and failed to divide said property in "just proportion" according to the standards and factors set forth in the applicable statute. Ill. Rev. Stat. 1977, ch. 40, par. 503; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.

The petitioner further contends that pursuant to section 503(c)(1) (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(1)) she contributed to the acquisition of the house located in Homewood, Illinois. The petitioner argues that as a result of her telephone call, the respondent returned to Illinois and arranged for the purchase of the house, and further, that she participated in the arrangements for the purchase of the house. The petitioner asserts that based on these efforts the trial court should have awarded her a larger share of the marital property.

In regards to the telephone call the record did not reflect that the respondent's return to Illinois was based on the petitioner's call. After the respondent was informed of the niece's conduct, the respondent indicated that he would take care of it when he returned home.

At a later date, arrangements for the purchase of the house were discussed among the petitioner, respondent, and Mrs. Doorley. In their meetings, the parties discussed the procedure for transferring the house as well as other preliminary matters. From the record it appears that petitioner's participation was limited in making the general arrangements for the purchase of the house.

■■ This real property awarded to respondent consisted of a two-bedroom house and its contents acquired as a gift about three years before the judgment for dissolution. During this time, this property, notwithstanding the fact that title was vested in respondent, was occupied by the grantor until shortly before the entry of the judgment herein. Respondent claimed the property was held by him subject to his obligation to care for the grantor. This claim of support was not disputed by petitioner, and the trial court was not convinced that petitioner had caused the acquisition of said property or made any contribution toward any increase in value. Under the circumstances of this case, the finding of the trial court that the Homewood property was a gift to respondent and was nonmarital property has ample support in the record and was not against the manifest weight of the evidence.

■■ Additionally, the cut glass set was also awarded to the respondent, and the parties' testimony differed as to whether the cut glass was marital property. The trial court, after hearing the testimony of both parties, awarded the cut glass to the respondent, as nonmarital property. The trial court heard the testimony of the parties and was in a better position to weigh their credibility and we do not find any basis to disturb this finding. *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254; *Tandy v. Tandy* (1976), 42 Ill. App. 3d 87, 355 N.E.2d 585.

■■ The petitioner next contends that she should be awarded the 1977 income tax refund in the amount of $500. The petitioner had stated that the marital home needed various repairs, and so, the trial court ordered the income tax refund applied towards the repairs. The 1977 income tax was the only available source of funds with which these improvements could be made, and the trial court acted properly in ordering that the refund check be used for such repairs.

On appeal, the petitioner raises other issues with respect to the respondent's insurance policies. The petitioner contends: (1) that the Veteran's Administration insurance policy should be transferred to her immediately; (2) that she should be designated the beneficiary of the life insurance policy from the respondent's job; and (3) that her medical coverage should be extended beyond the one-year period.

The property division required the respondent to maintain and pay the premiums on his Veteran's Administration insurance policy valued at $10,000. In addition, the petitioner was named the beneficiary of the

policy for five years, and at the end of the five-year period the respondent was directed to transfer the policy to the petitioner. The petitioner argues that since she is already the beneficiary of the Veteran's insurance the policy should be transferred to her immediately rather than in five years. The petitioner asserts that the respondent might move to another jurisdiction or that some event might occur which would prevent her from obtaining the policy. The petitioner's bare allegations and fears are unsupported and find no basis in the record. *Village of Matherville v. Brown* (1975), 34 Ill. App. 3d 298, 339 N.E.2d 346.

■ The petitioner also contends that she should be designated the beneficiary of the life insurance policy from the respondent's job; however, the property distribution did not include any reference to this life insurance policy. This is the first time this issue has been raised, and it therefore cannot be considered on appeal. (*Peifer v. Board of Trustees* (1978), 57 Ill. App. 3d 102, 372 N.E.2d 1106.) As for the medical coverage, the trial court heard the testimony of the petitioner and the respondent regarding their financial status, and its determination that the petitioner was entitled to medical coverage for one year will not be disturbed.

■■ Based on the above facts, the trial court considered the factors set forth in section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)), and did not abuse its discretion in distributing the marital and nonmarital property.

As for the maintenance award, the petitioner contends that the trial court abused its discretion and did not consider the relevant factors set forth in section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)) when it awarded maintenance, and that the trial court could not limit her award to two years.

Pursuant to the standards in section 504(b), the trial court considered, *inter alia*, the following matters:

*Financial Resources.* The respondent had been the sole support of the household, and his net income from his current job was $250 per week. He was required under the maintenance award to pay $40 per week in maintenance to the petitioner. This left the respondent with $210 per week for general living expenses.

The respondent had accumulated during his unemployment debts which totalled $8,000. These debts were incurred to support the household and the respondent was required to pay this debt out of his share of the marital award. The petitioner, however, was not required to pay any of the marital debts from her share of the marital award.

*Education.* The respondent had completed at least two years of college. The petitioner, however, did not finish high school. At the dissolution proceedings, Dr. Hillard Foster, a psychologist, testified that

the petitioner was employable and that she had the most potential in retail sales. He also stated that with training she could get a job in that area. We note that the respondent had enrolled in a two-year retail sales program at Harper College, and that she was capable of obtaining funds for her educational expenses. She stated that she had completed an application for a scholarship and would have received the scholarship if the college had not lost her application.

*Standard of living and the duration of the marriage.* During the 27-year marriage, the respondent paid the household expenses and provided all necessities for the petitioner and their two sons.

*Age, physical, and emotional condition.* The petitioner and respondent were respectively 51 and 63 years of age. Though the respondent indicated that he was not contemplating retirement, we note that he was nearing retirement age. The social security representative stated that at age 65, he would be eligible to receive $430 per month in retirement benefits. The petitioner at 51 years of age was ineligible to receive social security benefits. She would have to wait until she reached 62 years of age to receive approximately $151 per month in divorced wife benefits.

The petitioner and the respondent had various health problems. The respondent had heart disease and high blood pressure. The petitioner also had high blood pressure and was taking medication for a variety of other ailments.

As for the respondent's ability to support himself, we previously stated that the respondent had $210 per week for general living expenses, and that under the provisions of the property distribution, he was required to pay the $8,000 debt out of his 40% interest of the marital award. ■■■ In view of the factors stated in section 504(b), the trial court did not abuse its discretion in setting the maintenance award at $40 per week. The respondent's income, age, and health were some of the factors that the trial court considered in apportioning the maintenance award (*In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859). Nor did the trial court abuse its discretion in limiting the maintenance award for two years since there was sufficient evidence to support the limitation. *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868.

The petitioner's final argument is that the trial court's award of attorney's fees in the amount of $500 was insufficient. According to section 508(a)(5) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat 1977, ch. 40, par. 508(a)(5)), the trial court, after considering the financial resources of the spouses, may require one of the spouses to pay a reasonable amount in attorney's fees to the other spouse's attorney. Pursuant to section 508(a)(5), the respondent was ordered by the trial

court to pay $500 in attorney's fees to the petitioner's attorney and such sum was within the sound discretion of the court.

■■ The trial court had sufficient evidence of the respondent's financial resources before it granted the attorney's fees. The record indicated that the respondent's income was $250 per week, and that pursuant to the maintenance award, the respondent was required to pay the petitioner $40 per week in maintenance. In view of the respondent's income and his obligations under the property settlement, the trial court's award of $500 in attorney's fees was not an abuse of discretion. *In re Marriage of Pedersen* (1979), 77 Ill. App. 3d 716, 396 N.E.2d 659.

Our review of the record discloses that the judgment entered by the trial court was correct (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382), and for the above reasons the judgment is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.