*In re* MARRIAGE OF PATRICIA RIZZO, Petitioner-Appellee, and
WILLIAM RIZZO, Respondent-Appellant.

First District (4th Division)    No. 80-860

Opinion filed April 16, 1981.

William F. Bochte, P. C., of Elburn (William F. Bochte and Theodore L. Kuzniar, of counsel), for appellant.

Friedman & Koven, of Chicago (Robert J. Rubin, Oscar O. D'Angelo, and Michael P. Greenwald, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Respondent, William Rizzo, appeals from the judgment for dissolution of marriage and from an order denying his motion for a substitution of judges.

In attacking the dissolution judgment, respondent contends the trial court committed reversible error in making certain evidentiary rulings. Respondent also contends the provisions of the dissolution judgment touching upon the award of custody, support, property division, allocation of expenses, and award of attorneys' fees were erroneously entered and are contrary to the manifest weight of the evidence. Additionally, respondent asserts the trial court improperly denied him a substitution of judges in connection with the post-trial proceeding to enforce the judgment.

We affirm the judgment for dissolution of marriage as modified. No ruling is required on the motion for substitution because we believe the issue is moot.

Petitioner, Patricia Rizzo, and respondent, William Rizzo, were married in January 1970. They separated in February 1978. Shortly after the separation, petitioner filed a petition for dissolution of marriage, alleging mental cruelty. Thereafter, respondent, on October 4, 1979, filed his counterpetition for dissolution, alleging mental cruelty.

On March 24, 1980, after a contested trial, and based on petitioner's proof, a judgment for dissolution of marriage was entered.

Two children were born to the parties, Nina Jean, on September 7, 1974, and Michael Anne, on May 17, 1977. At the time of the entry of the judgment, petitioner was 30 years old and employed as a secretary and respondent was 32 years old and self-employed as a commodities trader.

The dissolution judgment contained a finding that both parties are fit custodial parents. The provisions of the judgment stated that the trial court, in awarding custody of the children to petitioner, had considered all of the evidence presented at trial and all the relevant factors used in

determining the best interests of the minor children. (See Ill. Rev. Stat. 1979, ch. 40, par. 602.) The judgment provided for a program of liberal visitation by the respondent with the children. The judgment also set out the obligation of the respondent to pay to petitioner "the sum of six hundred dollars ($600.00) per month, or twenty-seven percent (27%) of [his] net income, whichever sum is greater, as and for the support of * * * the minor children * * *."

Cut-off dates for the support allowance, payment by the parties of medical, dental, and hospital expenses, contribution for the children's educational expenses, the maintenance of certain policies of insurance, the safekeeping of the children's savings accounts, the division and award of household furniture and furnishings, automobiles, and other personal property and effects, and the allocated obligation for the payment of certain debts were likewise set forth, in detail, in the judgment.

The trial court specifically found "that the parties are each gainfully employed and are well able to provide for their own support and maintenance." Additionally, the trial court noted its consideration of the factors contained in section 504 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 504) and found "that based upon the criteria set forth in Section 504 of the Act and the financial circumstances of the parties, the parties are forever barred from making any claims against each other for maintenance and support (past, present, and future)."

The judgment also provided for the division of the marital residence. (The parties were in agreement that the market value of the residence was between $80,000 and $90,000.) The petitioner, with whom the children were to reside, was granted the right to exclusive possession of the home. The terms for continued exclusive possession were set out, with the respondent being ordered to turn over possession on March 31, 1980. Provisions for eventual sale of the residence and division of net proceeds, on the basis of two-thirds to petitioner and one-third to respondent with adjustments for certain credits, were also set forth.

The judgment also provided for the payment by the respondent to the attorneys for petitioner of the sum of $12,736.22 representing 80 percent of petitioner's attorneys' fees, costs, and disbursements. The petitioner was to pay her attorneys the sum of $3184.06 representing the remaining 20 percent. Additionally, respondent, on the same percentage basis, was directed to pay the sum of $4180 to Philip G. Mazzio, the appointed attorney and guardian ad litem for the minor children, and petitioner was to pay Mazzio $1045.

The evidence presented by the parties indicates that within a month after petitioner filed her dissolution action both parties, on March 17, 1978, appeared with counsel before the court and an agreed order was

entered by the motion judge granting the petitioner the temporary custody of the children and the exclusive possession of the marital home. Thereafter, and until the end of August 1978, petitioner resided in the marital residence with the children. The respondent lived elsewhere. However, by agreement of the parties, and without an order of court, respondent moved back into the marital home in September 1978; petitioner moved out; and the respondent, in effect, lived in the marital residence with the children as their custodial parent. On a somewhat regular basis, and with respondent's full approval and cooperation, petitioner would visit the children both in the home as well as outside the home.

On November 16, 1978, petitioner filed her petition seeking the return of the children into her custody. Petitioner later contended that the arrangement of her moving out of the marital residence and allowing the respondent to move back in with the children was her means of having the respondent realize how much he depended upon her. She hoped that respondent would then urge her to return so that the family could be reunited. Respondent, on the other hand, suggests that petitioner's conduct evidenced her emotional instability and her recognized inability to care for and supervise the minor children. Contending that the trial on the dissolution petition had been sharply advanced, petitioner asserts that, in view of the setting of an early trial date, no hearing was pursued on her pending petition requesting the return of the children into her physical custody.

The children continued to reside in the marital residence with respondent and, thereafter, pursuant to the dissolution judgment entered by the trial court on March 24, 1980, the respondent, on March 31, vacated the residence and the petitioner resumed living in the marital home with the children in her care and custody. As disclosed in oral argument, petitioner and the children have continued to live together in the marital home since March 31, 1980.

Opinion

I

Initially, respondent asserts the trial court erred in refusing to allow the respondent and certain of his witnesses to testify as to petitioner's inordinate and persistent consumption of intoxicants, petitioner's alleged intoxication in the presence of the minor children and petitioner's alleged propensity to consume alcohol on a regular basis. It is the contention of respondent that in seeking custody of the children, he was improperly prevented from establishing petitioner's alcohol abuse and the fact that on occasion petitioner would indulge in drinking and at the same time consume tranquilizers. Respondent argues that in being thwarted in the

presentation of that evidence, the trial court frustrated his right to a meaningful hearing that would have resulted in the minor children being awarded into his custody, that being in their best interests.

We agree with the proposition urged by respondent that it would be error for the trial court to exclude evidence of petitioner's alleged alcohol and drug abuse, particularly with regard to the impact such activity would have upon the children.

■■■ There is no argument that the extent of involvement of a custodial parent with alcohol and drugs and that parent's resulting conduct and physical condition are relevant avenues of inquiry to the issue of custody—but only if the custodial parent's consumption of alcohol and drugs can be shown to affect that parent's mental or physical health and that parent's relationship with the children. (See Ill. Rev. Stat. 1979, ch. 40, par. 602.) The degree of alleged alcohol or drug abuse is indeed a matter of serious consideration in resolving the issue of custody. We also agree with the cases cited by respondent that a lay witness may express an opinion based upon experience and observation as to whether a person is intoxicated. (*Doria v. Costello* (1974), 22 Ill. App. 3d 505, 318 N.E.2d 40; *Suppe v. Sako* (1941), 311 Ill. App. 459, 36 N.E.2d 603.) Our review of the extensive record, however, compels us to find that the respondent's contention is without merit.

Respondent claims the trial court committed reversible error in improperly excluding evidence of custodial dereliction on the part of the petitioner. However, the record of more than 1500 pages of testimony, pleadings, memoranda, and exhibits readily discloses that there was little evidence, on any point made by either side in connection with petitioner's alleged alcohol and drug abuse, that was not admitted, examined, considered, analyzed, emphasized, and carefully dissected by the parties' counsel and the court.

Our review of the record discloses that, one way or another, and sometimes to the chagrin of the trial judge, and despite his rulings, counsel on both sides presented all available evidence on each particular issue and especially on the issue of petitioner's alleged alcohol and drug abuse and its alleged effect on the children.

It would needlessly burden this opinion to indicate where, within the record, can be found the extensive evidence in connection with the claim that petitioner's alleged alcohol and drug abuse had a harmful effect on the children. Suffice it to say that a review of the testimony and the evidence presented on this issue, which could have considerable importance in determining who would have custody of the two young girls, provoked each party to present to the trial judge every bit of available evidence on each contested point, and there was little that remained uncontested. We also note that, unfortunately, the degree of acrimony,

bitterness and hostility evidenced throughout the trial was not restricted to the issue of alleged alcohol or drug abuse on the part of petitioner. The record is replete with accusations by each of the parties of serious misconduct by the other and the alleged consequent adverse effect of such alleged conduct on the children. To detail the opprobrious charges made by the parties against each other and to point out the fact that all of the accusations lacked any significant evidentiary support would be of little value and would do nothing but further harm the innocent children caught within the throes of this parental conflict. At most, the record discloses that both petitioner and respondent lacked a certain degree of innocence. Fortunately, and despite the vicissitudes that engulfed the minors, the record clearly evidences the children's excellent mental and physical health, which incongruously was, to a substantial degree, the product of the love, affection, concern, and care bestowed upon them by the parties.

Again, our review of the record indicates that the respondent's contention that he was improperly denied the right to present evidence of petitioner's alleged alcohol and drug abuse and the alleged adverse effect therefrom upon the children finds no support in the record. There is no merit in the respondent's claim. Additionally, the record fails to support respondent's accusations of misconduct.

## II

■■ Respondent next asserts the trial court, during the custody hearing, improperly refused to allow into evidence certain hearsay statements made by the children to a third party. A witness for respondent was John Montonano, a neighbor who knew the children. Respondent attempted to elicit from Montonano testimony to the effect that the children told him, apparently sometime shortly before the trial, that they wished to live with respondent. This testimony was objected to as hearsay and the court sustained the objection. Respondent contends the statements should have been admitted under the "state of mind" exception to the hearsay rule.

One of the factors a court is to consider in determining custody is the wishes of the children concerning with whom they desire to live. (Ill. Rev. Stat. 1979, ch. 40, par. 602(a)(2).) Thus, one of the ultimate questions the court must determine is the wishes, or state of mind, of the children concerning custody. This being the case, the statements by the children made to Montonano shortly before trial expressing their then existing state of mind, though hearsay, were admissible if made under conditions assuring trustworthiness. (See *Bradley v. Booz, Allen & Hamilton, Inc.* (1978), 67 Ill. App. 3d 156, 384 N.E.2d 746.) Hence, in the present case, the children's statements to Montonano should have been admitted.

Though it was error to exclude the statements, we do not believe the error resulted in any prejudice to respondent. We note that the trial court held an extensive *in camera* examination of the children concerning their wishes as to custody. During this examination, Nina Jean told the court she wanted to live with respondent. Michael Anne told the court she wanted to live with petitioner. The court elicited many other answers from the children indirectly reflecting upon their wishes. Thus, we believe the court was presented with ample evidence concerning the wishes of the children, and the exclusion of their statements to Montonano was harmless error.

### III

Respondent next contends the trial court erred in refusing to issue a body attachment for a subpoenaed and allegedly indispensible witness and consequently forced respondent to close his case without the benefit of that witness' testimony.

The record discloses that the witness sought to be brought before the court after having failed to respond to a subpoena was Andrew Frano. It appears that several days after the hearing concerning custody had begun and after a number of witnesses had been called and examined by respondent's counsel, an oral motion was made by counsel seeking the issuance of a body attachment for Frano, who allegedly had been served with a subpoena two days beforehand. Upon respondent's counsel's acknowledging that the subpoena was improper in form, the trial court struck the subpoena and refused to issue an attachment writ. See Ill. Rev. Stat. 1979, ch. 110, par. 62.

Thereafter, some five days after petitioner had rested her case in chief, respondent sought a delay in the trial to effectuate service of another subpoena upon the witness and if necessary to obtain the witness' attachment upon failure of the witness to respond to a subpoena. The record is unclear as to whether a subpoena, proper in form, was ultimately served on the witness. Nor do we find any explicit offer of proof contained in the record to advise the court of the specific testimony that would be elicited from the witness were he brought before the court. Thus, it appears that counsel for respondent was attempting to obtain a continuance of the trial while failing to comply with the requirements of law relating to establishing good cause for granting a continuance after trial has begun. See Ill. Rev. Stat. 1979, ch. 110A, par. 231(f); *Schneider v. Seibutis* (1972), 3 Ill. App. 3d 323, 279 N.E.2d 37.

In view of the foregoing, we necessarily conclude that the trial court did not err in refusing to issue a writ of attachment for a witness who allegedly was under subpoena.

## IV

■■ Respondent further contends that another serious procedural error was committed by the trial court. Respondent claims the trial court committed reversible error in conducting a so-called "trifurcated hearing." It is respondent's position that the trial court conducted three distinct and separate hearings: first, a contest on grounds; second, a contest on custody; and third, a contest on allowances, property division, attorneys' and guardian ad litem fees, and any other matters not already concluded.

While respondent acknowledges the effectiveness and propriety of a bifurcated hearing as provided under section 403(e) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 403(e)), he contends that the hearing held here was "trifurcated" in nature and thus legally impermissible.

It appears that an initial hearing on grounds was held on October 29, 1979. Following this, the court entered an order, finding as to grounds in favor of petitioner. Thereafter, a hearing on custody, property division, and all other matters was held in March 1980. However, this hearing, which lasted six trial days, was apparently divided into two parts—the first part to consider the issue of custody and the second part to consider all other matters. This kind of procedure was used because the parties expressly agreed to do so. Now respondent contends that, since the Marriage and Dissolution of Marriage Act allegedly allows for only a bifurcated hearing, one on grounds, and another on custody, maintenance, property division, and other matters, the procedure used in the present case was improper and requires reversal.

For respondent to now contend that the procedure used was improper after he expressly agreed to the procedure at trial is an argument totally without merit, and we find we need consider this issue no further.

## V

It is further claimed by respondent that the trial court, in determining the custody issue in favor of petitioner, improperly invoked and applied the so-called "tender years doctrine." Respondent suggests that, to a substantial degree, the trial court's conclusion that the children be awarded into the custody of petitioner was based on the children's being girls in their early years of life, and the fact that petitioner, as the mother, was somehow better suited, physically and emotionally, to have custody of the children during their formative years.

■■ Though we agree with respondent that the "tender years" standard has been repudiated in Illinois (see *Pratt v. Pratt* (1975), 29 Ill. App. 3d 214, 330 N.E.2d 244; *Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 320 N.E.2d 581; *Anagnostopoulos v. Anagnostopoulos* (1974), 22 Ill. App. 3d 479, 317 N.E.2d 681), we cannot agree that the trial court applied that

standard in this case. Respondent merely points to the trial court's isolated statement, "I tell you * * *, in this case, I have two children of very tender years. You have a mountain to climb to convince this court that a five and a half year old or a three year old can understand the impact of a mother drinking at a party and so forth," and asserts that this statement by the trial court indicates the court applied the "tender years" standard. Our search of the evidence presented fails to support respondent's conclusion.

A review of the record discloses that the trial court, in its determination of the issue of custody, closely applied the "best interests of the child" standards mandated under the provisions of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 602). Throughout the proceedings, there is presentation of testimony and other evidence by both parties directed to the required standards, and the court, in determining custody, declared it had considered this evidence and the applicable standards. The record wholly fails to support respondent's position that the trial court used an inappropriate basis upon which to determine the custody issue.

Respondent also claims the trial court erroneously sought evidence of petitioner's unfitness as a basis for determining custody, as opposed to considering only the best interests of the children as the standard for the determination. Again, our study of the record fails to establish respondent's claim.

The trial was of a seriously contested nature. Charges and counter-charges, one against the other, abound. Each party proclaimed the unfitness of the other to have the legally designated custody of the children. While it is clear that the trial court devoted time and attention to the personal accusations of the respective parties, and considered whatever evidence may have supported the charges, it would be totally inaccurate to contend that the trial court based its determination of custody only on the fitness or lack of fitness of the petitioner. The respondent's claim is without merit.

## VI

Respondent next asserts that the award of custody to the petitioner was contrary to the manifest weight of the evidence, an abuse of the trial court's discretion, and contrary to the best interests of the children. We cannot agree.

Twelve witnesses, including two highly qualified psychologists testified in the proceedings concerning custody. An abundance of testimony was elicited from the parties and the witnesses. Each party charged the other with serious misconduct which allegedly had a direct adverse effect upon the children. The recriminatory accusations are plentiful. However, the record fails to disclose sufficient evidence to support the charges on either side.

It would be wasteful and unrewarding to detail the various accusations, the alleged factual proof that was submitted, and the claimed adverse impact of the alleged misconduct on the children. Nor would it serve any useful purpose to detail the testimony of the psychologists who arrived at conflicting conclusions as to who should have custody. Likewise, we do not feel that it would be helpful to review the role played by the court appointed guardian ad litem and comment on his recommendation that custody should be awarded to petitioner.

We are fully aware of the serious implications that arose when petitioner vacated the marital residence and left the children with the respondent for a period of about 20 months from September 1978 to April 1980. Additionally, we recognize the consequent instability created in the lives of the children when they were moved to and fro between the parties. However, we also note that respondent, apparently evidencing his belief in the fitness and ability of the petitioner to care for the children, approved a court order granting temporary custody of the children to petitioner. We further note that many of the respondent's charges as to the alleged misconduct of the petitioner relate to her alleged activities prior to the entry of the agreed temporary custody order. Also, we recognize that, during the period of time the respondent resided with the children and the petitioner lived elsewhere, a continuing close contact and visitation between petitioner and the children was maintained and was supported and encouraged by the respondent. Likewise, we are mindful of the petitioner's assertion as to the reason for her leaving the children with the respondent and of the petition presented to the court by the petitioner seeking a return of the children into her custody pending the trial of the dissolution case. Finally, we are aware that the children have resided with petitioner in the marital residence since March 31, 1980.

Stability of environment is an especially essential ingredient in promoting the physical and emotional well-being of young children in their formative years. (*Wurm v. Howard* (1980), 82 Ill. App. 3d 116, 402 N.E.2d 407; *De Franco v. De Franco* (1979), 67 Ill. App. 3d 760, 384 N.E.2d 997; *Cave v. Cave* (1971), 2 Ill. App. 3d 782, 276 N.E.2d 793.) An unstable home life, changes in the designated custodial parent, and erratic relationships between a young child and his parents can destroy the well-being of the child. The shifting of a child's custody from one parent to the other can create, in the mind of the child, feelings of insecurity and lack of self-worth. Simply put, the result may be that the child is emotionally damaged, and that emotional injury may later manifest itself in serious ways. Accordingly, unless the reasons are compelling and relate themselves directly to the best interests of the child, a further change in the child's custodial arrangement should not be ordered. *In re Custody of*

*Russell* (1979), 80 Ill. App. 3d 41, 399 N.E.2d 212; *Holloway v. Holloway* (1973), 10 Ill. App. 3d 662, 294 N.E.2d 759.

We note again that the evidence presented by each party reflects little to substantiate any significant misconduct on the part of the other. Particularly, there is a dearth of evidence to indicate that either party's conduct had a deleterious effect on the children. In fact, the evidence submitted by both parties and supported by the testimony of the psychologists evinces rather conclusively that the children are in essentially excellent emotional health and apparently are in excellent physical health. It is clear from the evidence presented to the trial court that, despite the poor relationship between the parents, the emotional well-being of the children has not suffered. Nor can we find that the proven conduct on the part of each party was of a nature that adversely affected the children's well-being.

A perusal of the whole record leads us to conclude that the trial court, after carefully considering all of the evidence presented, properly concluded that no traumatic or harmful consequence would befall the children were the petitioner to resume residing with them in the marital home. In fact, it would be in the children's best interest to place them in petitioner's custody.

We are also constrained to observe that in cases regarding custody, Illinois courts recognize a strong and compelling presumption in favor of the result reached by the trial court. See *Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 320 N.E.2d 581.

We also add that the trial court must determine custody in accordance with the "best interests" of the child and the court is not to consider conduct of a present or proposed custodian that does not affect his relationship with the child. Ill. Rev. Stat. 1979, ch. 40, par. 602(a),(b).

Based on the foregoing we cannot agree with the contentions asserted by the respondent since we do not find the trial court's custody determination was made contrary to the manifest weight of the evidence.

## VII

Respondent also claims the trial court erred by setting an excessively high award to be paid by respondent for the support of the two minor children.

The terms of the dissolution judgment directed that, beginning April 1, 1980, the respondent was to pay to the petitioner as support for the children the sum of $600 per month or 27 percent of respondent's net income, whichever was greater. Times for abatement or termination of the support allowance were provided. The dissolution judgment also set forth the trial court's declaration that it had "considered all of the factors

enumerated in Section 505 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 505) and [had] considered the needs and financial circumstances of the parties and the parties' minor children" in determining the amount to be paid by respondent to petitioner for the children's support.

It is the respondent's contention that the award of support was equivalent to one-half of respondent's net income and did not reflect the obligation of petitioner to contribute to the support needs, considering that petitioner earned $889 net per month. Further, the respondent asserts the trial court, in setting the support allowance to be paid by respondent, failed to comply with the standards set forth in section 505. Respondent, while not disputing the needs of the children or the extent of their required support, contends that his financial resources and his total financial picture, including the extent of his alleged current income and his alleged outstanding debts, do not warrant the high support allowance granted by the trial court.

■■ The financial responsibility for the support of children is a joint and several obligation of each parent. (*In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 403 N.E.2d 323.) The factors to be considered in determining the amount of child support are the financial resources of the child, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the child and his educational needs, and the financial resources and needs of the noncustodial parent. (Ill. Rev. Stat. 1979, ch. 40, par. 505.) The determination of the proper amount of child support lies within the sound discretion of the trial court and will not be set aside absent an abuse of discretion. (*Sandberg v. Sandberg* (1973), 11 Ill. App. 3d 495, 297 N.E.2d 654.) We find no abuse of discretion here.

The record discloses that considerable testimony was elicited from both parties touching upon their financial status as reflected by their income, expenses, resources, debts and obligations. There was no dispute as to the needs of the children. Necessarily, the income of the respondent as an individual commodities trader varied from time to time. However, the income tax returns of the respondent reflected before tax income of approximately $37,000 in 1977, $54,000 in 1978, $44,000 in 1979. Respondent's 1980 income was projected to be about the same as 1979.

It appears that the trial court scrutinized closely the financial and economic data that was submitted by the parties. The trial court noted that the petitioner, until the marital home was sold, was obligated to pay the monthly mortgage installment of $264.64 and the real estate taxes levied on the property. The nature of the petitioner's secretarial position, her income of approximately $890 net per month, and any additional benefits available through her employment, along with the nature and

amount of her expenses, likewise were considered by the trial court. We also note that while the respondent claimed to be in debt in the amount of $37,000, approximately .$25,000 of the alleged indebtedness was represented by the mortgage loan relating to the marital residence, which was to be paid by petitioner until the home was sold. Further, respondent's claimed indebtedness included approximately $6500 owed respondent's aunt by both respondent and petitioner. The debt was of long standing and no regular payments were being made to liquidate it.

In passing, we note the trial court may have had some difficulty in learning the amount of respondent's income. In the course of a hearing in March 1980, the record discloses the defendant testified that his earnings from January 1, 1980, to March 7, 1980, came to "one penny"; then, that he earned from June 1979 to March 1980, approximately $17,441; then, that his present average gross monthly income was approximately $1200; then, that his present net monthly income was approximately $1200. Nevertheless, we find from the record that the trial court was able to make a sufficiently accurate determination of the financial status of both parties and thereby set an appropriate allowance for support.

■■ Based upon all of the evidence presented in connection with the support allowance ordered to be paid by respondent on behalf of the minor children, we cannot find, as respondent suggests, that the allowance was excessive or that the trial court abused its discretion in setting the amount.

## VIII

■■ Respondent contends that a part of the order awarding the marital home to petitioner was erroneous. Petitioner was awarded possession of the marital residence. The residence was to be sold on the happening of any of the following events: (1) petitioner's remarriage; (2) petitioner's cohabitation with another person on a conjugal basis; (3) the attainment of majority of the children; or (4) the parties' mutual agreement to sell the property.

Upon sale, petitioner was to receive two-thirds of the net proceeds and respondent one-third. Petitioner was to maintain payments on the mortgage and real estate taxes and to pay all other homeowner's expenses.

The part of the order that respondent takes issue with is the court's declaration that upon sale petitioner would receive a credit for all mortgage payments she had made following the dissolution judgment. Respondent contends that this order is directly contrary to the court's order that neither party would be entitled to maintenance from the other. He claims that the credit for mortgage payments constitutes an award of maintenance to petitioner.

We do not see how such a credit can be considered maintenance.

Petitioner will be making the mortgage payments. If the parties chose, they could sell the home today. The mortgage would be paid off and each would be entitled to a share of the net proceeds. Respondent's share today would be one-third of the equity in the home. If, instead, petitioner continues to pay on the mortgage and eventually pays the entire mortgage debt, the equity in the home would increase and upon sale respondent would be entitled to his one-third share of that greater equity. The court, by giving a credit to petitioner for the mortgage payments, was merely preventing respondent from enjoying in a share of the increased equity which increase would be the result of petitioner's payments. Though a portion of those payments would be interest rather than a contribution to equity, the court, in its discretion, could have assumed that the value of the home itself would increase in the natural course of events, and that petitioner should be entitled to some credit for simply maintaining the mortgage on the home to allow for a future sale at a higher value which would benefit respondent as much as petitioner. Hence, we find that the credit for the mortgage payments does not amount to maintenance, and respondent's argument is without merit.

## IX

As a remaining error allegedly committed by the trial court, respondent claims, in effect, that the attorneys' fee award to counsel for petitioner and to the guardian ad litem was excessive in amount. Additionally, respondent asserts the fee award was improperly entered because the trial court failed to consider the respondent's financial inability to pay the award and petitioner's ability to do so.

In reaching decision on other aspects of this case, we have already noted our review of the financial circumstances of the parties as disclosed in the record. We believe the record amply supports the 80 percent-20 percent allocation for the responsibility for attorneys' fees. The trial court indeed considered the financial resources of both parties and the ability of each party to pay the fee allowances in question and the inability of petitioner to pay a substantial part of her fees. However, though the percentage to be paid by respondent was properly set, we believe the amount of attorneys' fees awarded in this case is excessive.

The Illinois statute provides that the trial court, after considering the resources of each spouse to pay, may order either spouse, or both, to pay a reasonable amount for costs and attorneys' fees necessarily incurred. (Ill. Rev. Stat. 1979, ch. 40, par. 508(a).) In determining the amount of fees to be awarded, the court must necessarily consider several factors including the nature of the controversy, the question at issue, the significance or importance of the subject matter including its financial aspects, the degree of the responsibility involved, the results achieved, the

standing or skill of the attorney employed and the time and labor involved. (*In re Marriage of Pedersen* (1979), 77 Ill. App. 3d 716, 396 N.E.2d 659.) The award must be in such amount as will compensate for the services rendered, and must be fair and just to all parties concerned. (*Canham v. Saisi* (1978), 65 Ill. App. 3d 686, 382 N.E.2d 654.) The time spent must have been reasonably required and necessary for the proper performance of the services involved. (*Canham v. Saisi* (1978), 65 Ill. App. 3d 686, 382 N.E.2d 654.) The allowance of attorneys' fees is within the sound discretion of the trial court, and such an award will not be reversed unless the trial court has clearly abused its discretion, but a reviewing court should not hesitate to reduce the fees awarded if they are unreasonably high. *Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56.

■■ Speaking first to the fee award to counsel for petitioner. The record before us demonstrates no such complexity of issues as would be reasonably required to justify an award of a fee of approximately $15,000. The fact that both parties sought custody did not make the case unusually difficult. (See *In re Marriage of Kruse* (1980), 92 Ill. App. 3d 335, 416 N.E.2d 40.) While the record clearly depicts many hours and days spent in contentious litigation (petitioner's counsel claimed that over 233 hours were entailed in petitioner's required representation both in and out of court), something more must be shown to justify an award of fees than merely a compilation of an hourly rate. (*In re Marriage of Pedersen* (1979), 77 Ill. App. 3d 716, 396 N.E.2d 659.) We find noteworthy the remark of counsel for petitioner in explaining the reason for his objection to certain testimony: "I accept your ruling. It is just my policy always to object."

■■ A perusal of the voluminous transcripts of testimony indicates the accuracy of counsel's remarks and also shows that counsel for respondent reacted by using the same countertechnique. Necessarily, the time spent in acrimonious and lengthy objections and arguments on the most minor of points abound throughout. To run up chargeable attorneys' time in that type of proceeding would be inappropriate and in effect would reward an attorney for wasting time.

Objection was made by counsel for respondent to the trial court's consideration of time spent by three additional counsel in the office of petitioner's primary counsel. The record discloses that the first of these additional attorneys was alleged to have devoted 55.5 hours of time on behalf of petitioner. The charge for this time, as set out in an office print-out case report, was $4822.50. The second attorney allegedly devoted 4.25 hours of time at a cost of $205. The third attorney allegedly devoted 25.25 hours at a total charge of $883.75. Primary counsel was shown as having devoted 148.25 hours of time at a total charge of $10,905.

■■ No formal hearing on the claim for attorneys' fees and costs was conducted. There was a mixture of assertions and rebuttals interspersed with a number of objections. Over objection, the hours of service allegedly rendered by the three additional counsel in primary counsel's office was permitted to stand although counsel for respondent claimed their absence precluded his right to cross-examine them as to the nature and extent of the services rendered. Whether such a lack of cross-examination precluded the court from awarding the fees based on the hours spent by primary counsel's associates need not concern us. Our examination of the record, and especially considering the financial circumstances of the parties, clearly shows us that a $10,000 award for the costs and attorneys' fees of petitioner is adequate and, pursuant to our authority to do so (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5); *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661), we hereby reduce the award to that amount which is to be paid 80 percent by respondent and 20 percent by petitioner.

The amount of attorneys' fees granted to the attorney for the children was set by the trial court at $5225, payable 80 percent by respondent and 20 percent by petitioner. Here too, and for the reasons already expressed, we believe counsel for the children must share in the unnecessary prolongation of this proceeding. Correspondingly, we reduce the fee award to the attorney for the children by $1225. The net award of $4000 shall be paid 80 percent by respondent and 20 percent by petitioner.

## X

Finally, we address respondent's appeal from the trial court's order of March 25, 1980. The order denied respondent's petition seeking a substitution of judges in connection with a hearing to enforce the provisions of the dissolution judgment entered on March 24, 1980, which directed respondent to return the minor children into petitioner's physical custody.

In oral argument it was disclosed that the custodial turnover was carried out promptly and the children reside with petitioner in her custody. We believe the issue upon which the substitution of judges petition was filed is now moot, and no further action by this court is required.

Accordingly, for the reasons set forth, the judgment for dissolution of marriage, as modified herein, is affirmed.

Affirmed as modified.

JOHNSON and JIGANTI, JJ., concur.