*In re* Marriage of CHARLES RUSSELL SMITH, Petitioner-Appellant and Cross-Appellee, and CAROL JO SMITH, Respondent-Appellee and Cross-Appellant.

Fourth District   No. 4—83—0230

Opinion filed January 19, 1984.—Rehearing denied April 3, 1984.

I. J. Feuer, of Springfield, for appellant.

Richard T. Mitchell, of Jacksonville, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Charles and Carol Smith separately appeal several of the financial decisions that the circuit court made in dissolving their marriage, which lasted 11 years and produced two children. The Smiths were married in 1971; a daughter was born in 1974, and a son was born in 1975. The marriage was dissolved April 1, 1982. Charles and Carol are in their thirties.

Charles farms in partnership with his father, Roy. In the farming partnership Charles and his father own and operate a 160-acre farm, where they cultivate crops and raise livestock. In addition to this, the partners cultivate 350 other acres. Income and expenses are shared equally. From 1977 to 1980, Charles' income ranged between $30,000 and $11,000; in 1981 he lost about $9,000. These amounts include various tax credits and capital gains in addition to income derived from the farming operations. Charles calculated that his annual living expenses were about $14,300.

Carol is a registered nurse and works full time at a hospital in Jacksonville. She worked throughout the marriage except when she took maternity leave. At the time of the property hearing—September 1982—her take-home pay was $450 every other week, and her gross pay was $625. She had no large assets or liabilities. She listed about $15,700 in annual expenses for her and the two children.

The circuit court found that the Smiths' wedding rings were their only items of nonmarital property and assigned them accordingly. The Smiths' marital property was concentrated in the farm and in the usual articles of domestic life. The circuit court awarded each spouse about $3,200 worth of household goods and about $5,500 worth of vehicles. Charles was awarded his two life insurance policies, which together had a cash surrender value of about $2,400 at that time. All the rest of the marital property comprised Charles' interest in the farm and share of the partnership assets and was awarded to him. The circuit court assigned the farm a value of $382,950, exclusive of growing crops, so Charles' half interest was worth $191,475. His farm machinery was worth $14,600. His share of the hogs and cattle on hand was worth about $110,000, and he had about $1,200 in a miscellaneous farm account. Charles was ordered to pay Carol $5,000 a year for six years, a total of $30,000, with interest, in lieu of marital property.

The circuit court assigned to Charles liabilities of $390,000, almost all of which were related to the farm and partnership, and freed Carol

from any responsibility for them.

The parties do not dispute the circuit court's valuation of their assets and liabilities, though Charles correctly points out that the assets he received were worth $330,000, $10,000 less than the sum calculated by the court. Under the circumstances, the difference is insignificant.

Carol was awarded custody of the two children, and Charles was ordered to pay $200 per month per child for support, reduced by half during the four weeks out of every year they are to spend with him on extended visitation. The court did not award maintenance and ordered each spouse to pay his or her own attorney fees.

PROPERTY AND MAINTENANCE

Charles, in his appeal, argues that the circuit judge awarded Carol an excessive amount of money in lieu of marital property and should have entered an order barring her from obtaining maintenance in the future. Carol, in her cross-appeal, argues that the circuit judge erred in denying her maintenance: in ruling on Charles' post-judgment motion the court struck its original award of $100 per month.

■ A division of property will be affirmed unless it represents an abuse of discretion. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238.) Here, the circuit judge was aware that his division of the marital assets and debts was leaving Charles with a negative net worth but believed that the numerals did not accurately portray the underlying facts. The circuit judge referred to Roy Smith, Charles' father and partner, as Charles' personal banker. The court understood that the relationship between Roy and Charles is not the traditional one of creditor and debtor, for father and son are partners in a family enterprise. The circuit judge also believed that Roy and Charles had an informal understanding that Charles would eventually own the entire farm through either gift or devise. The record does not contain direct evidence of this intention, though one could perhaps infer it from the family's circumstances.

■ Most important, the circuit judge thought that Charles would earn more money than Carol but that none of the marital assets that were related to the farm could be awarded to her practicably. Given the duration of the marriage and the small amount of marital property assigned to Carol, awarding her a total of $30,000 in cash in lieu of property was appropriate. Although Charles is responsible for all the marital debts, he also has the great bulk of the marital property. The farm debts and assets should remain in one person. The circuit court did not abuse its discretion in awarding Carol $30,000 in lieu of

property and in making the award payable in installments. *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087.

■ In making this award the circuit court's order said, "Petitioner shall pay Respondent cash in lieu of an award of marital property the sum of Thirty Thousand and No/100 (30,000.00) Dollars payable in six (6) equal annual installments of Five Thousand and No/100 ($5,000.00) Dollars each beginning January 10, 1983, with interest thereon at the rate applicable to money judgments." Charles argues that the order is ambiguous and asks whether he must pay interest on the entire unpaid balance—which he believes would be unfair—or only on payments that are overdue. We construe the order as imposing interest on the unpaid balance; Charles may add the interest for each installment to that installment as it comes due. This will compensate Carol for the delayed use of those sums; it is an appropriate price for Charles to pay for the benefit of an installment rather than lump-sum method of payment.

Carol argues that the circuit court's original award to her of $100 per month in maintenance should be reinstated. In ruling on Charles' post-judgment motion the circuit judge vacated that award because he believed that Carol herself was responsible for her lack of job security; her job insecurity was one of the reasons why the court initially awarded maintenance.

■ ■ Maintenance should be awarded only when the spouse requesting it lacks sufficient assets and income to provide for his or her needs. (Ill. Rev. Stat. 1981, ch. 40, par. 504(a).) Carol's full-time though temporary employment and the five-year award of cash make maintenance unnecessary. The circuit court did not abuse its discretion in denying Carol maintenance.

Finally, Charles argues that the circuit court should have entered an order barring Carol from obtaining maintenance in the future. In *In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 403 N.E.2d 323, a spouse was denied maintenance and barred from obtaining it in the future. We do not see either the necessity or significance of entering a similar order here. If an initial denial of maintenance is later modifiable, then, absent the parties' prior agreement to the contrary, an order foreclosing it in the future would also be modifiable.

CHILD SUPPORT

Charles argues that the amount he must pay for support of the two children—$200 per month per child—is excessive. This amount is reduced by half for the period when the children are with him on extended visitation. Carol argues against that reduction.

■ ■ The amount awarded for child support is reserved to the circuit judge's discretion. (*In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 420 N.E.2d 555.) Here, the court thoroughly considered the parties' separate financial circumstances and the standard of living that the children would have enjoyed had their parents' marriage stayed intact. The court's result is not an abuse of discretion.

■ Carol argues in her cross-appeal that the circuit court erred in reducing the amount of support in half during the yearly four-week period of Charles' extended visitation. The court made this reduction in ruling on Charles' post-judgment motion. The reduction is reasonable and appropriate, for Carol will not be bearing the children's day-to-day expenses during that part of the year.

ATTORNEY FEES

Carol argues that Charles should have been ordered to pay her attorney fees, which were about $3,000. Charles has moved to dismiss this part of the cross-appeal as untimely. Unlike the two other issues Carol raises in her cross-appeal, the attorney fees question was determined by the circuit court's judgment, entered January 4, 1983, and does not arise from the disposition of the one post-judgment motion, Charles', on March 16, 1983. The appeal and cross-appeal were filed March 29 and April 7.

The motion to dismiss this part of the cross-appeal was taken with the case, and we now deny it. The supreme court's recent opinion in *In re Marriage of Uphoff* (1983), 99 Ill. 2d 90, establishes that the time for appealing or cross-appealing did not begin to run until the circuit court's disposition of Charles' post-judgment motion.

■ The decision whether to allow one spouse to recover his or her attorney fees from the other spouse is reserved to the circuit court's discretion. (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499.) That discretion was not abused here. Charles' financial circumstances are not so much better than Carol's that he should be required to discharge this additional expense.

Affirmed.

TRAPP and GREEN, JJ., concur.