*In re* MARRIAGE OF BARBARA E. MOORE, Petitioner-Appellee and Cross-Appellant, and JOHN D. MOORE, Respondent-Appellant and Cross-Appellee.

Fifth District No. 82—22

Opinion filed August 25, 1983.

HARRISON, P.J., dissenting.

Edward J. Kionka, of Carbondale, and Charles D. Winters, of Winters, Brewster, Brown & Permar, of Marion, for appellant.

Mitchell & Armstrong, Ltd., of Marion (J. C. Mitchell, of counsel), for appellee.

JUSTICE JONES delivered the opinion of the court:

Respondent, John D. Moore, appeals from that portion of the judgment of dissolution of marriage providing for child support. The issues raised by respondent are (1) whether the trial court's award of $24,000 per year for the support of two minor children constituted an abuse of discretion; (2) whether the trial court erred in providing for automatically escalating child-support payments; and (3) whether the trial court erred in requiring John to pay the two children's post-majority medical and dental expenses. Petitioner cross-appeals, contending that in the event the child support award is reversed, this court should also reverse the judgment of the trial court regarding the division of marital property and remand for another determination of that issue.

The parties were married in 1966 while in college. Petitioner graduated in 1966 with a degree in accounting and subsequently became a certified public accountant. Respondent continued his education until he graduated from medical school in 1971. Following her graduation petitioner worked as an accountant while respondent was in medical school and completing a four-year residency. From 1975 to 1977 the parties were in Ft. Leonard Wood, Missouri, where respondent served in the Army. Work was scarce at Ft. Leonard Wood, and petitioner was able to work only part time in a thrift shop. Two children were born to the parties, Peter in 1971 and Amy in 1976.

In 1977 the parties moved to Carbondale where respondent joined the staff of the Carbondale Clinic as a general surgeon. Petitioner worked part time as a CPA for a local firm. As an associate of the clinic, respondent's gross income increased from $62,000 in 1978 to $110,000 in 1980. The parties separated in 1980. Respondent resigned from the clinic in August 1980. At the time of the hearing on the property disposition, maintenance and child support, he was in the process of moving to Sidney, Montana, where he would establish a medical and surgical practice. He had reached an agreement with a hospital in that city whereby he was guaranteed a gross income for the first year of $120,000. There were also agreements with the hospital relating to moving expenses and support for office overhead expenses.

In 1980 petitioner had returned to school to obtain a master's degree in accounting. It was her stated purpose to teach at the junior college level and it was her expectation to earn $15,000 per year. Al-

though she could expect to earn about $19,000 working as a CPA, she chose to teach to afford herself more time to devote to the raising of the children.

Final judgment was entered on December 21, 1981. Custody of the children was awarded to the petitioner. Respondent as ordered to pay child support in the amount of $12,000 per child per year effective November 1, 1981. Effective January 1, 1983, the child support was to be increased by $1,000 per child per year. Like increases of $1,000 per child per year were ordered until each child reached age 18 or finished high school. Respondent was also ordered to pay higher education expenses of the children, extending through graduate school. Respondent was lastly ordered to keep health and dental insurance for the children or otherwise pay all health and dental costs until each child reaches age 22.

■■ We consider first the requirement in the judgment that respondent pay for the children's medical and dental expenses past the age of their attainment of majority. Petitioner has conceded that this is error. (Ill. Rev. Stat. 1979, ch. 40, par. 505.) Accordingly, that portion of the court's order directing the payments is reversed.

■■ Respondent next directs an argument against that portion of the judgment which provided an automatic escalation of the child-support payments. We find that the argument is well taken. The judgment provided that the support payments should increase by $1,000 per child per year "until each child reached his or her eighteenth birthday or finishes high school, whichever occurs last." In the past we have held that escalation provisions in a judgment for child support are improper. We observed that '[b]ecause changes in these facts cannot be anticipated with accuracy, a circuit court should ordinarily not try to anticipate such changes by making its award of child support to increase automatically with the child's age. [Citation.] The self-adjusting aspect of the award of child support must, therefore, be reversed." *McManus v. McManus* (1976), 38 Ill. App. 3d 645, 647, 348 N.E.2d 507.

Petitioner argues that the escalation clause was proper because the "trial court had a right to reasonably expect that John anticipated that his future income would certainly be expected to increase in such a dramatic fashion as it had while he was at the Carbondale Clinic." However, the trial court was not entitled to rely on the possibility or the likelihood of future increases. (*Elizer v. Elizer* (1976), 36 Ill. App. 3d 552, 555, 344 N.E.2d 493.) The court in *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785, after quoting *McManus* with approval, referred to several situations in which automatic increases in

support payments based on anticipated gains have been disallowed. The court held that the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*) is "geared towards a present ability to pay support and does not suggest in its terms that possible future financial resources of a party may also be taken into account." *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 134, 416 N.E.2d 785, 792.

Petitioner cites several cases in which courts have "approved" automatic increases in the amount of support payable by the father. Unlike the present case, however, those cases do not involve an arbitrarily fixed increase triggered by nothing more than the passage of a year's time. In fact, the court in *In re Marriage of Raidbard* (1980), 87 Ill. App. 3d 158, 408 N.E.2d 1021, did not approve automatic increases of any kind. Rather, the court fixed payments at $650 per month, a modification sought because of a dramatic change in the father's ability to pay. In *Vollenhover v. Vollenhover* (1955), 4 Ill. App. 2d 44, 123 N.E.2d 114, a situation in which quarterly bonuses caused the father's income to fluctuate, the court did provide for increases in support payments, but these were made contingent upon the increases in his income actually taking place. In addition, the court's order contained a provision for automatic reduction during those months when the earnings decreased. Likewise, *In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 420 N.E.2d 555, and *Robbins v. Robbins* (1976), 40 Ill. App. 3d 653, 353 N.E.2d 110, involved situations in which incomes fluctuated unpredictably from year to year. To accommodate these changes, the court in those cases chose the most convenient method of calculation for both the party paying child support and the custodial parent receiving the payments, *i.e.*, it computed the award on a percentage basis which would cause the payments to adjust according to the increases or decreases in income as they occurred. The court's order in the instant case contains no such adjustments or accommodations. We hold, therefore, that the provision for automatic escalation of support payments was in error.

■ Respondent finally argues that the trial court erred in fixing the amount of support at $12,000 per child per year. This amount, he contends, is not justified by the evidence relating to the children's needs and the respondent's ability to pay and is so excessive as to constitute an abuse of discretion. We must agree.

Section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 505(a)) provides that in a proceeding for dissolution of marriage the court may order either or both parents to pay an amount reasonable and necessary for support, after

considering all relevant factors. The relevant factors are stated to include (but are not limited to) the financial resources of the child, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the child, and his educational needs and, finally, the financial needs and resources of the noncustodial parent.

At the hearing held for the purpose of determining the disposition of property and fixing the amount of maintenance and child support, it was established that the net worth of the parties was approximately $200,000. Although the petitioner was unemployed at the time, she anticipated obtaining a teaching position that would pay about $15,000 a year. Petitioner had nonmarital property consisting of stocks, bonds and cash equivalents valued at approximately $23,500. She received in the distribution of marital property approximately $48,885 of income-producing property and the marital home in which the equity was $24,440. Petitioner testified that her living expenses were $17,139 per year. Respondent testified that his living expenses totaled $16,608 and that his business expenses, which were estimated to be $24,968, would increase the following year by $12,264 when he was to commence paying his office rent.

The petitioner testified that the annual expenses of the children totaled $32,856 and furnished a breakdown of the several items to show how she arrived at the figure. She stated on cross-examination that she did not believe the amount excessive for children of the wife of a doctor and the daughter of a doctor. The several items listed included $1,956 for medical and dental costs and insurance, $3,600 for vacations, $2,880 for clothing, $2,580 for child care, $12,624 for household operations and $1,296 for transportation costs. Respondent contends that in light of the financial condition of the parties, these amounts are unreasonable. The trial court must have agreed, at least to some extent, for it fixed the amount payable for the two children at $24,000 per year. However, we believe further reduction is required by consideration of the reasonable and necessary needs of the children and the present financial circumstances and ability of the respondent to pay.

The petitioner acknowledged in her testimony that when it becomes necessary to establish two households, the resulting dilution of available money generally requires the parties to curtail their standard of living.

Petitioner explained the various items in her list of expenses necessary for the children. She was spending $130 a month for counsel-

ing for the children to help them understand why their father was leaving. She spent $300 per month (at an annual rate of $3,600) for vacations. She said they took one trip to Canada, three trips a year to watch out-of-town basketball games, a one-week vacation each year, several trips to Sikeston (Missouri, about 80 miles distant from Carbondale), and a river float trip once a year. The $2,200 per year for recreation and hobbies went for swimming lessons, YMCA dues, Cub Scouts, an aquarium, fishing tackle, baseball, Skate Train and movies. She stated that she spent $2,880 a year for the children's clothing and that such amount was necessary for their customary standard of living. Child care and Sunday School expenses were stated to be $2,580 per year, but both children were in school, Peter all day and Amy in kindergarten at the time. The household operation and transportation expenses were derived by taking two-thirds of the total cost of maintaining the home and a 1980 Mercedes auto. The costs of the household included $716 per month payment on a mortgage that at the time had a balance due of $76,000. They also included taxes, insurance, utilities, repairs, cleaning and laundry. These figures are all-inclusive and it seems to us unlikely that two-thirds of all the stated items comprising the total figure can be attributable to the direct expense of child-rearing.

While respondent had the assurance of $120,000 of income for his first year at Sidney, Montana, this is a gross, not a net, figure. He was, at the time, still in the process of relocating himself and establishing his household and his medical practice in Sidney. Beyond the first year, he has no assurance of income. While the expectation of a substantial income was present, it is not certain. Many variables would enter into the calculation. Prospects and expectation of a much larger income are an insufficient basis upon which to fix child support. Prudence places the limits for such support within the visible horizon. Having consideration for the facts set forth in section 505(a) of the Act, we are of the opinion that child support in the amount of $24,000 per year is not warranted by the evidence, and the trial court committed a breach of discretion in fixing it in that amount.

In an interim order entered in the case, the trial court set the amount of temporary child support at $500 per child per month. In her motion for temporary relief the petitioner alleged that respondent had been paying her $800 per month but that that amount was insufficient to support herself and the children in the manner and style to which they were accustomed. She then alleged that the amount of expenses for such purposes was as set forth in an itemized statement which accompanied the petition. There was a separate category for

the children, containing nine separate items which totaled $1,120 per month. None of the nine items listed included any amount for operation of the household.

In a brief submitted to the trial court at the close of the evidence, and contained in the record, the petitioner urged the court to set child support at $600 per month per child. Admittedly this figure was linked to an urging for a greater allowance of marital property than the court in fact ultimately allowed. In an answering brief the respondent stated the fairness of a figure of $500 per month per child.

Having regard for the factors set forth in section 505(a) of the Act, the reasonable and necessary needs for support and the ability of the parties to pay, we fix the support at $650 per child per month. That amount will be sufficient to furnish the children a high, though not lavish, standard of living and permit some payment for household expenses. The obligation of the respondent for health and dental care, and educational expenses is to remain as determined by the trial court except as to the liability for medical and dental expenses beyond the children's attainment of majority.

In sum, the judgment of the trial court is modified by deleting the provision that holds respondent responsible for the medical and dental expenses of the children after they attain majority, by deleting the provision for escalation of child-support payments on an annual basis and by reducing the child-support payments to be made by respondent to $650 per month per child.

 In her cross-appeal petitioner asks that in the event an adjustment is made in the child-support payments, the case be remanded in its entirety for reconsideration of the disposition of the marital property. However, to do as petitioner requests would constitute a suggestion to the trial court to tilt its disposition of marital property in such a manner as to compensate for the reduction in child-support payments that has now been made. If such "adjustment" were in fact made, it would constitute a subversion of the statute governing the disposition of marital property. Such disposition is to be made solely in accord with the guidelines furnished in that statute. Child-support payments, on the other hand, are to be determined solely in accord with the guidelines furnished by the applicable statute. We have not modified the judgment of the court regarding the disposition of marital property. No imbalance in the division of property has been wrought by our order. Therefore, there is no reason to remand the case to the trial court for a reconsideration of the disposition of marital property.

Judgment modified in part and affirmed in part.

KARNS, J., concurs.

PRESIDING JUSTICE HARRISON, dissenting:
I respectfully dissent.

I agree with the majority that the judgment of the trial court should be modified by vacating the provisions that hold respondent responsible for the medical and dental expenses of the children after they attain majority and that escalate child support payments on an annual basis, but I must dissent from that portion of the order of the majority that holds that the trial court committed a "breach of discretion" in fixing the amount of child support and reduces the child-support payments to be made by respondent to $650 per month per child.

The amount of an award of child support is a matter within the sound discretion of the trial court, and the award will not be disturbed on appeal absent an abuse of discretion. Such an abuse of discretion occurs only when no reasonable man would take the view adopted by the trial court. (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 812, 439 N.E.2d 1005, 1008-09.) Under the facts of the case *sub judice*, I cannot say that the trial court abused its discretion in awarding $12,000 per year per child as child support. Absent an abuse of discretion, a reviewing court should not substitute its discretion for that of the trial court. *In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 508, 436 N.E.2d 228, 232.

Therefore, I would affirm the child-support award entered by the trial court.