**William R. HUNTER, Appellant (Respondent Below),**

v.

**Penelope L. HUNTER, Appellee (Petitioner Below).**

No. 4-285A33.

Court of Appeals of Indiana, Fourth District.

Oct. 27, 1986.

James A. Federoff, Beckman Lawson Sandler Snyder & Federoff, Fort Wayne, for appellant.

Michael A. Aspy, Tourkow Crell Tosenblatt & Johnston, Fort Wayne, for appellee.

MILLER, Judge.

Penelope L. Hunter filed for dissolution of her twenty (20) year marriage to William R. Hunter and for custody of and support for the parties' then sixteen (16) year old daughter, Erin. After a trial, the court awarded custody of Erin to Wife, and, because of Husband's grossly fluctuating income, he was ordered to pay child support of no less than fifty dollars ($50.00) per week plus twenty-five percent (25%) of his net after-tax wages over two hundred five dollars ($205.00) per week, not to exceed a total of ninety-two dollars and fifty cents ($92.50) per week. Husband was also required to designate the parties' minor daughter as sole beneficiary of his $2,000 group term life insurance policy. The trial court divided the parties' marital estate between Wife and Husband, ordering approximately 55% of net assets paid to Wife and 45% paid to Husband, with Husband assuming liability for marital debts of approximately $4,600.00. Husband was ordered to pay all of Wife's attorney fees incurred in the dissolution action. Husband appeals the trial court's decree on multiple grounds.

We affirm in part and reverse in part. We reverse the child support self-adjusting escalation clause and find the amount insufficient and clearly erroneous. We remand for findings of fact and setting a fixed amount of child support. The judgment of the trial court is affirmed regarding naming child as beneficiary of Husband's insurance policy as child support,

marital property division, award of attorney fees, and date of separation of the parties.

## FACTS

Wife filed her petition for dissolution on February 22, 1983. She continued to live in the marital residence with the parties' two children, Erin, a minor daughter then 16 years of age and Kevin; an emancipated son then 19 years of age.

Following a contested hearing on March 31, 1983, the trial court entered a provisional order for temporary maintenance of Wife and temporary support of the parties' minor daughter in the undivided amount of $175.00 per week. In addition, Husband was ordered to pay Wife's attorney $550.00 in fees. At the time of the support hearing, Wife was employed part-time for Northeast Three Rivers Central Labor Council, AFL–CIO, in a clerical job earning $20.00 to $40.00 per week. Husband's gross earnings as a self-employed insurance salesman from January 1983 through March 1983 were $9,969.00.

An unreported trial was held on June 21, 1983. The proceedings were limited to the issues of support and property division. Both Wife and Husband were high school graduates with no post-secondary educational degrees. Husband was self-employed as a health and safety consultant during 1982 and earned nearly $30,000. Husband changed jobs in December 1982 and began marketing group life insurance plans to labor unions for American Income Life Insurance Company in Indianapolis. His earnings were derived from commissions paid on a one time basis and were dependent upon the number of union members who elected to participate in those plans. Future commissions were not paid for continued participation of union members in the plans. Husband claims his relatively large commissions earned in the first quarter of 1983 were the result of the efforts of a few of his friends and these contacts were soon exhausted. Coincidentally, Husband's gross earnings decreased dramatically after the pendente lite support and maintenance order was issued and remained substantially reduced through the final hearing.[1] Husband admits his current employment has been unsuccessful and testified he was seeking other employment.

Wife testified at trial that she had worked only part time throughout the marriage, but had obtained a full-time clerical position in April 1983 which paid her $5.00 per hour, and had continued her part-time clerical job. Wife received a total earned income in 1982 of $2,432.00 and from January 1, 1983 to June 21, 1983 of *$2,167.50*. In addition, Wife began receiving $20.00 per week from the parties' emancipated son, who became employed before trial and continued to live with Wife, to defray his room and board expenses.

Husband testified he received gross income in the amount of *$11,399* from January 1 through June 21, 1983. His income had been subject to wild fluctuation, varying from a high of $5,600 per month (before separation) to a low of $319 per month (after separation). During the eleven weeks before trial, Husband's income had decreased to a total of $1,370.00; or $124.55 per week gross earnings, $81.09 per week net earnings after self-employment expense deductions.

Wife requested Husband pay $92.50 per week in child support for their 16 year old daughter. Husband testified as to his fluctuating income and claimed he was able to pay no more than $25.00 per week in child support.

The parties stipulated in the pre-trial order that the marital home and three automobiles should be sold, with the net proceeds to be distributed in accordance with the trial court's decree. Marital liabilities were also stipulated at approximately $4,600. The values of the household goods and furnishings located in the marital resi-

---

1. There has been no allegation of wrongful conduct made against Husband despite the suspicious facts that Husband is self-employed and his income dropped significantly between the time of separation and initial hearing, and again between initial hearing and trial.

dence and the Husband's apartment were not disputed, although the parties disagreed as to who should be awarded certain items of property. The parties did not agree on the values of Wife's jewelry, Husband's jewelry, and a coin collection and 1979 Ford Thunderbird automobile in Husband's possession. Each party presented appraisals of these items which varied substantially.

Wife requested Husband pay her attorney fees of $1,475.00 remaining after Husband's pre-trial payment of $550.00. Husband testified his precarious financial situation precluded him from paying his own attorney fees, and claimed he was unable to pay any more of Wife's attorney fees.

On July 1, 1983, the trial court entered a decree of dissolution establishing support and related orders for the parties' minor daughter, dividing marital property including the marital residence, assigning payment of liabilities, and ordering Husband to pay Wife's remaining attorney fees. The decree awarded custody of Erin to Wife with reasonable visitation granted to Husband. Husband was ordered to keep Erin insured for medical and health purposes and to pay all uninsured medical and dental expenses exceeding $50.00 per year. Husband was granted the right to claim Erin as his dependent for federal and state income tax exemption purposes. Regarding Husband's obligation to support Erin, the decree stated:

"4. The Respondent is hereby ordered to pay to the Clerk of Allen County, Indiana, for the maintenance and support of said child, the sum of not less than Fifty Dollars ($50.00) per week, nor more than Ninety-Two Dollars and Fifty Cents ($92.50) per week; said sum above the aforesaid Fifty Dollars ($50.00) per week to be paid by the Respondent as follows:

Fifty Dollars ($50.00) per week *plus* twenty-five percent (25%) of Respondent's net, after tax wages, above $205.00 per week, but not to exceed $92.50 per week.

Respondent shall, at the end of each month, provide Petitioner with proof of Respondent's monthly income, including an itemization as to Respondent's gross, itemized deductions, and net income per month. Respondent is further ordered to pay the Clerk of this Court the annual support service fee, now $15.00 per year."

The trial court also required Husband to designate Erin as the sole and exclusive beneficiary of Husband's group term life insurance policy in the amount of $2,000 or to place the policy in trust for Erin's benefit in the event Husband dies before Erin is emancipated.

The trial court decree provided for division of marital assets by awarding all household goods and personal property in possession of Wife to her and all household goods and personal property in possession of Husband to him. Husband was awarded a 1979 Thunderbird, his life insurance policy, and his pension. Husband was ordered to pay marital unsecured liabilities of about $4,600 including $3,000 in previous Federal income taxes, $76 in previous state taxes, $200 in dental bills, and $1,300 in charge accounts. The marital home and three automobiles were ordered sold and profits to be divided 55% to Wife and 45% to Husband.

The trial court also ordered Husband to pay the balance of Wife's attorney fees in the sum of $1,475.00 as well as his own unpaid attorney fees.

*Issues*

Husband presents four issues for review:

I. Whether the trial court's child support order constituted an abuse of discretion?

A. Whether the trial court's self-adjusting child support order was an abuse of discretion, in that Husband's income was the only variable which resulted in adjustments of the amount of the order? [2]

---

2. The Husband also objects to the trial court's requirement for Husband to continuously divulge his earnings to Wife, on a monthly basis, without a corresponding requirement placed

upon Wife, and claims this constitutes an abuse of discretion and an invasion of privacy. Because we find the self-adjusting support provi-

B. Whether the trial court abused its discretion in establishing the amount of the child support in light of the resources of the parties and the financial needs of Husband?

C. Whether the trial court's requirement for the mandatory and exclusive designation by Husband of the parties' minor child as the sole beneficiary of a term life insurance policy was an abuse of discretion?

II. Whether the trial court's division of the parties' net marital estate was an abuse of discretion because it was disproportionate and unequal?

III. Whether the trial court abused its discretion by ordering Husband to pay all of Wife's attorney fees incurred through the trial date in the dissolution action?

IV. Whether it was contrary to law and the evidence for the trial court to decree the date of separation of the parties, for the purpose of assigning liability for debts, as February 4, 1983?

## DISCUSSION and DECISION

### I. *Child Support Order*

█ Husband attacks both the propriety and the amount of the child support order. Determination of proper child support is within the sound discretion of the trial court and depends upon the particular facts and circumstances disclosed by the evidence in each case. *Olson v. Olson* (1983), Ind.App., 445 N.E.2d 1386; *Howard v. Reeck* (1982), Ind.App., 439 N.E.2d 727; *In re Osborne* (1977), Ind.App., 369 N.E.2d 653. The trial court's determination will not be disturbed on appeal unless it either represents an abuse of discretion or is contrary to law. *Olson, supra; Inkoff v. Inkoff* (1974), 159 Ind.App., 239, 306 N.E.2d 132. A child support order constitutes an abuse of discretion by a trial court when the order entered is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences that might be drawn sion is an abuse of discretion, we need not

therefrom. *Olson, supra; Swinney v. Swinney* (1981), Ind.App., 419 N.E.2d 996.

IND.CODE 31–1–11.5–12(a)–(d) sets forth the appropriate considerations governing the initial establishment of child support and provides as follows:

"(a) ... the court may order either parent or both parents to pay *any amount reasonable for support* of a child, without regard to marital misconduct after considering all relevant factors including:

(1) The financial resources of the custodial parent;

(2) Standard of living the child would have enjoyed had the marriage not been dissolved;

(3) Physical or mental condition of the child and his educational needs; and

(4) Financial resources and needs of the noncustodial parent.

(b) Such child support order may also include, where appropriate:

(1) Sums for the child's education in schools and at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses; and

(2) Special medical, hospital or dental expenses necessary to serve the best interests of the child.

(c) As part of such child support order the court may set apart such portion of the property of either parent or both parents, as may seem necessary and proper for the support of the child ..."

### A. *Self-Adjusting Support Order*

We again quote Paragraph 4 of the Decree of Dissolution:

"4. The Respondent is hereby ordered to pay to the Clerk of Allen County, Indiana, for the maintenance and support of said child, the sum of not less than Fifty Dollars ($50.00) per week, nor more than Ninety-Two Dollars and Fifty Cents ($92.50) per week; said sum above the aforesaid Fifty Dollars ($50.00) per week to be paid by the Respondent as follows: reach this issue.

Fifty Dollars ($509.00) per week *plus* twenty-five percent (25%) of Respondent's net, after tax wages, above $205.00 per week, but not to exceed $92.50 per week.

Respondent shall, at the end of each month, provide Petitioner with proof of Respondent's monthly income, including an itemization as to Respondent's gross, itemized deductions, and net income per month. Respondent is further ordered to pay the Clerk of this Court the annual support service fee, now $15.00 per year."

Husband challenges this order as an abuse of discretion because Husband's income was the only variable resulting in adjustments in the amount of the order. Husband objects to the trial court's establishment of a "sliding" child support order which self-adjusts each week based on the net income received by Husband, subject to the stated minimum and maximum amounts, instead of the "traditional approach of establishing a fixed dollar amount for child support, with future increases dependent upon the outcome of modification proceedings." Wife asserts the statute does not mandate a specific weekly amount of child support be established and the support order is a reasonable alternative under the circumstances of this case. We find this self-adjusting child support order, which varies each week based only upon Husband's net income, is an abuse of the trial court's discretion.

Upon initial examination, it is not immediately obvious why Husband would challenge the support order as it clearly favors him in that it provides a sliding scale based only upon *his* ability to pay. Since the trial court apparently found daughter's maximum need to be $92.50 per week, if the court had set that fixed amount, Husband could readily establish an arrearage of $42.50 per week during those weeks when his income was depressed to $205.00 or less per week. Instead, the trial court took a practical, if unusual, approach to the problem of Husband's wildly fluctuating income, an approach that benefits Husband

to the detriment of his daughter and fails to consider the other factors required to be addressed by our statute.

Both parties argue two cases support their position, *Herron v. Herron* (1983), Ind.App., 457 N.E.2d 564 (J. Young dissenting) and *Branstad v. Branstad* (1980), Ind. App., 400 N.E.2d 167. In *Branstad*, the trial court ordered the amount of child support should be adjusted annually by the percentage change in the Consumer Price Index (CPI) published by the United States Department of Labor. Husband contended this provision denied him a fair and impartial hearing on the issue of child support. This court upheld the provision and noted that a parent could petition the court to show that his or her income had not increased sufficiently to meet increases in support obligations caused by the adjustments for change in the CPI:

"In summary, we approve the court's order prescribing an adjustment in the amount of child support based upon changes in the Consumer Price Index because the provision (1) gives due regard to the actual needs of the child, (2) uses readily obtainable objective information, (3) requires only a simple calculation, (4) results in judicial economy, (5) reduces expenses for attorney fees, and (6) in no way infringes upon the rights of either the custodial parent or the noncustodial parent to petition the court for modification of the decree due to a substantial and continuing change of circumstances."

*Branstad* at 171.

In *Herron*, the trial court set a fixed amount of child support to be reviewed and fixed on December 31 of each calendar year based upon submission by the parties of their annual income and by use of the local Support Guidelines adopted by the court. Wife appealed, claiming this support provision allows child support to be modified without a hearing and cross examination, and without a showing of substantial and continuing change in the child's circumstances. This court disagreed and held the trial court's order did not violate

either the "letter" or the "intent" of the initial child support determination statute or the modification of child support provision. Judge Conover wrote:

"[The modification of child support statute] refers to catastrophic changes in circumstances, not annual fluctuations in the cost of living index, local wage scales, and other economic factors trial courts consider when establishing or revising support guidelines of the kind here at issue.... it is imperative we seize every opportunity which presents itself to expand the system's capacity to process this floodtide [of child support modification] where the proposed action will not dilute or impair the quality of the particular judicial task involved.

It seems to us apparent such orders not only do not violate, they further legislative intent in this area. As to child support, the legislature intended the best interests of the children involved were to be the prime consideration when trial courts determine support payment questions in dissolution cases. Such intent is better served by orders of the kind here entered, rather than those without flexibility because such orders realistically keep the purchasing power of the original support order current from year to year, and in consonance with the ebb and flow of the economy.

Lastly, we note we here deal with a locally-researched and prepared support guideline, not merely a national economic indicator such as the Cost of Living Index. In other words, the trial court considered local economic conditions as well as national indices when it formulated and modified its support guideline from time to time to keep it current with economic conditions in Hendricks County and its environs. That consideration, it seems to us, removes the last vestige of reasonable objection to court orders incorporating such guidelines as the measure of child support in dissolution decrees. We applaud such laudible judicial advances."

*Herron* at 570–71.

The primary purpose of escalating support orders based on the Consumer Price Index which were approved by this court in *Branstad* and *Herron* is to keep the purchasing power of the original support order current from year to year in times of significant inflation without resort to the courts and the consequent time and money necessarily expended by the parties, their counsel, and the judiciary. Although a support order is adequate when made, rampant inflation can quickly diminish the effective amount with which to meet the needs of the child and the custodial parent then must return to court seeking an increase. Escalating support orders have proven to be an appropriate solution to this problem in Indiana and in other jurisdictions. *Branstad, supra; Herron, supra; Petersen v. Petersen* (1981), 85 N.J. 638, 428 A2d 1301, 1303–1304; *In re Stamp* (1980), Iowa, 300 N.W.2d 275, *reh. denied* (Iowa 1981); *In re Meeker* (1978), Iowa, 272 N.W.2d 455; *In Interest of J.M. & G.M.* (1979), Tex. CW.App., 585 S.W.2d 854, 856–57; *In re Mahalingam* (1978), 21 Wash. App. 228, 584 P.2d 971. *See also* Annot. 75 A.L.R.2d 493 (1977).

However, in this case the · problem presented to the trial court was not rampant inflation and its effect of diminishing the purchasing power of a child support order, but rather an allegedly uncertain and erratic income earned by the non-custodial parent. The trial court chose to design a self-adjusting support order in which increases and decreases in the father's income, subject to stated minimum and maximum amounts, are the sole catalyst for a change in the amount of support. In so doing, the trial court exceeded the bounds of its discretion.

■ Several of our sister jurisdictions have addressed the propriety of alimony[3]

---

**3.** In *DiTolvo v. DiTolvo* (1974), 131 N.J.Super. 72, 328 A.2d 625, the court invalidated a provision that required husband to pay 50% of his net salary raises as additional alimony on grounds that the provision was (1) based upon only one factor, husband's income; (2) contrary

or child support awards based upon percentage of income [4] or sliding scale formulas. While there is a split of authority among the various states, we are persuaded that the automatic increase and decrease of the amount of child support based upon the single criterion of non-custodial parent income is improper.[5]

to established principles of alimony and modification; and (3) would be difficult to enforce. *See also, Roscini v. Roscini* (1973), 41 App. Div.2d 895, 342 N.Y.S.2d 681 where the court held invalid a separation decree provision which required husband to pay 12.5% of any bonus or lump sum salary in additional alimony because wife is not entitled to a share of husband's income as such and has no right to escalation of alimony if husband prospers; *Jacobs v. Jacobs* (1979), 219 Va. 993, 254 S.E.2d 56 in which the court found improper an escalation clause requiring husband to pay 25% of all income in excess of $32,000 as additional alimony because it violated the design and purpose of the statute governing spousal awards and their modification; *Golden v. Golden* (1971), 37 App. Div. 578, 323 N.Y.S.2d 714; *Provenzano v. Provenzano* (1979), 71 App.Div.2d 618, 418 N.Y.S.2d 140; *Kern v. Kern* (1970), 65 Misc.2d 765, 319 N.Y.S.2d 178. *But see, Mills v. Mills* (1982), Fla.App., 417 So.2d 298, where the court held an order providing that alimony payments would automatically increase in amount equal to one-half of any gross increase received by husband in military retirement income was not abuse of discretion, where husband was a retired Air Force colonel who received regular increases in his retirement benefits based on consumer price index, ordered increases occurred only in proportion to increase in husband's ability to pay, inasmuch as husband's increases were based on cost-of-living index, wife's need would necessarily proportionately increase, and order was subject to continuing right of parties to prove any independent change of condition which might affect need or ability to pay; *Eannarino v. Eannarino* (1982), 294 Pa.Super. 81, 439 A.2d 760 in which the court upheld an escalation clause in former wife's action to compel former husband to make alimony payments, in accordance with separation agreement providing for increase based on increase in husband's "net earnings after taxes," husband's social security and pension benefits were properly included in his net earnings where agreement defined "net earnings" as including "all income."

4. Several states have held escalating child support orders valid or enforceable when based upon a percentage of the non-custodial parent's income. *Robinson v. State* (1983), Miss., 437 So.2d 410; *Edwards v. Edwards* (1983), 99 Wash.2d 913, 665 P.2d 883; *Heinze v. Heinze* (1982), 122 N.H. 358, 444 A.2d 559; *Chandler v. Ratcliffe* (1982), 248 Ga. 700, 285 S.E.2d 694; *Jensen v. Jensen* (1981), Mont., 629 P.2d 765; *Runge v. Kohn* (1981), 102 Ill.App.3d 356, 430 N.E.2d 58; *Elbinger v. Elbinger*, 33 Mich.App. 166, 189 N.W.2d 823. The rationale of the cases upholding and enforcing an escalation clause is generally predicated on such clauses being triggered by a change in the net income of the non-custodial parent, which is one of the factors which ordinarily justifies modification. These cases assume the amount to be paid is not indefinite or uncertain and is readily ascertainable. *See* 24 Am.Jur.2d, *Divorce and Separation,* § 1039 at 1030; Annotation, "Validity and enforceability of escalation clause in divorce decree relating to alimony and child support," 19 *A.L.R.* 4th 830 (1983).

5. *But see, Vollenhover v. Vollenhover* (1954), 4 Ill.App.2d 44, 123 N.E.2d 114, where the Illinois Court of Appeals approved a provision for automatic increase and decrease in support payments when quarterly bonuses caused the father's income to fluctuate. The Illinois courts have approved calculation of child support awards on a percentage of the non-custodial parent's income when this income fluctuated unpredictably from year to year. *In re Marriage of Rizzo* (1981), 95 Ill.App.3d 636, 51 Ill.Dec. 141, 420 N.E.2d 555; *Robbins v. Robbins* (1976), 40 Ill. App.3d 653, 353 N.E.2d 110. The court stated its rationale:

"... [these cases] involved situations in which incomes fluctuated unpredictably from year to year. To accomodate these changes, the court in those cases chose the most convenient method of calculation for both the party paying child support and the custodial parent receiving the payments, i.e., it computed the award on a percentage basis which would cause the payments to adjust according to the increases or decreases in income as they occurred."

*In Re Marriage of Moore* (1983), 117 Ill.App.3d 206, 72 Ill.Dec. 797, 800, 453 N.E.2d 102, 105. The Illinois courts have struck down automatic increases in the amount of support when triggered only by the passage of time or the child's age, *Id.* 72 Ill.Dec. at 800, 453 N.E.2d at 105, because such orders improperly rely upon the possibility or likelihood of future increases in father's income. *See also, McManus v. McManus* (1976), 38 Ill.App.3d 645, 348 N.E.2d 507. Other jurisdictions have also found escalation clauses triggered solely by the child's age invalid or unenforceable. *Penkoski v. Patterson* (1983), Fla.App., 440 So.2d 45; *Lairmore v. Lairmore* (1980), Okl., 617 P.2d 892. The Oklahoma Supreme Court stated its rationale for striking an escalation clause based solely on the child's age:
"we think it improper for a trial court to provide for automatic future changes in child support, based upon a single criterion, in the case before us, age. Whether a child will be in need of additional child support, and

The Oregon Supreme Court, in *Picker v. Vollenhover* (1955) 206 Or. 45, 290 P.2d 789, refused to enforce an Illinois decree and ruled that support payments based upon fluctuations in the father's income alone were invalid and reasoned:

"... At the time of divorce the court should not lay down rules for the future whose propriety would depend on circumstances materially different from those shown by the evidence and which cannot reasonable be predicted from the evidence. *In particular, it should not in the original decree provide for future changes in the quantum of support based on the single criterion of the change in the amount of the earnings of the defendant.* The original decree retains its vitality unless and until the court on proper showing finds that on all of the evidence presented a change in support is required.

To adopt as an Oregon decree sliding-scale provisions for the future which are geared to a single one of the circumstances which are relevant to show changed conditions would be contrary to the established policy of this state ..." (Emphasis added).

290 P.2d at 801.

Addressing a similar child support order, in *Christoffersen v. Christoffersen* (1949), 151 Neb. 763, 39 N.W.2d 535, the Nebraska Supreme Court held that child support payments that would vary depending upon the amount of the appellant-father's monthly income were improper. In that case, the child support was fixed at $70.00 monthly when the father earned $175.00 a month, and $50.00 monthly when he earned less than $175.00. Finding this "sliding scale" form of award improper, the Court stated:

"The decree provides child support on a sliding scale, the sum payable depend-

ing upon the amount of the earnings of appellant. The amount is not fixed and certain, but is made to depend upon the future earnings of appellant, and these may frequently fluctuate.... *Support money, when allowed, should be based upon present conditions, and not made to depend upon uncertain and speculative contingencies or hypothetical earnings or income.* Procedure has been provided for the revision and modification of such orders based upon the situation existing and made at the time of the trial, if the circumstances of the parties change or it shall be to the best interests of the children.... The practice adopted by the district court in this case [the sliding support award] is disapproved." [Emphasis added]. 39 N.W.2d at 540.

More recently, the Nebraska Supreme Court reaffirmed this holding in *Breiner v. Breiner* (1975), 195 Neb. 143, 236 N.W.2d 846 when it struck down a child support escalation provision based on father's annual bonuses. The court objected to the form of the support award and emphasized the need for such awards to be definite and certain, based upon present conditions, and not made to depend upon speculative contingencies or hypothetical earnings. The court also recognized a potential problem:

"The need for computation itself is not an objectionable, but an extraneous fact unknown until the end of the year, that is, the amount of the bonus, is necessary to compute the amount of child support. Executions could not be insured by the clerk of the District Court without a hearing to obtain information from an employer about the amount of appellant's bonus, so as to ascertain the exact amount due and the amount for which

whether the parent is able to provide such additional support, is not contingent upon a child's age. The court has no way of knowing what the financial status of either the child's mother or father will be in the future, nor does the court know whether the child will be employed, is receiving insurance, benefits, scholarships, or the like. The creation of such automatic increases in child support

based upon a single criterion such as age, income, or location, is too speculative, as the court has no way of knowing the financial positions or needs of the parties, based upon such single criterion. This being the case, we hold that the trial court erred in providing for the automatic increases in child support based upon age."

*Id.* at 894–895.

execution should be levied." 236 N.W.2d at 849.

The Michigan Court of Appeals, in *Stanaway v. Stanaway* (1976), 70 Mich.App. 294, 245 N.W.2d 723,[6] struck down a child support escalation clause based solely on the non-custodial parent's income, stating:

"[I]t abrogates the requirement for [a petition to modify] by allowing a continual [yearly] alteration of the judgment as to the amount of support ..." Second, and more important, it "focuses exclusively on the 'circumstances' of the [paying parent] while ignoring the complex factors relating to the 'benefit of the children' and their changing or unchanging needs."

245 N.W.2d at 726.

Here, we find four defects in this escalating child support order based solely on the non-custodial father's income:[7] 1) it does not give due regard to the actual needs of the child; 2) it does not consider the non-custodial parent's financial means in relation to the other three factors required to be considered under our statute; 3) it produces an amount of support that is speculative and changing; and 4) it may cause administrative and enforcement problems or encourage animosity and additional litigation by the parties because they did not request or agree to the order fashioned by the trial court.

First, and most important, the touchstone of the trial court's determination of the amount of child support is always the needs and welfare of the child. The primary defect in this order is that it does not give due regard to the actual needs of the child, found by the trial court here to be $92.50 per week. Instead, provision for the child becomes solely a function of the non-custodial parent's ability to pay.

Second, our statute provides a parent may be compelled to pay any amount reasonable for child support and enumerates *four factors* which must be taken into consideration by the trial court when determining the amount of support. The non-custodial parent's means are not the sole criterion but rather must be considered in relation to the custodial spouse's financial resources, the child's physical and mental condition and educational needs, and the standard of living the child would have enjoyed if the dissolution had not occurred. Our statute does not contemplate the trial court will lay down rules for the future whose propriety will depend upon facts and circumstances materially different from those shown by the evidence and *which cannot reasonably be predicted from the evidence*. In particular, the trial court should not provide a sliding scale of payments of child support to increase and decrease automatically in proportion to the earnings of the father, since such an order is based upon the assumption that a change in only one of our four statutory factors, the father's income, will measure his obligation to pay. *See, Dunne v. Dunne* (1986), 209 N.J.Super. 559, 507 A2d 273, 278. Our statute specifically provides three other factors which must also be considered to properly determine the amount of future payment, and, again, the needs of the child are the primary factor in this determination.

---

**6.** *But see, Anneberg v. Anneberg* (1962), 367 Mich. 458, 116 N.W.2d 794 where the Michigan Supreme Court upheld an order requiring father to pay 39.7 percent of his gross earnings as child support for two minor children, providing the sum not exceed $250.00 per month per child; the court viewed this order not as an escalation clause but rather as stating a maximum from which father was relieved of a portion annually. *See also, Hakken v. Hakken* (1980), 100 Mich. App. 460, 298 N.W.2d 907, where the appellate court held an escalator clause in a child support order enforceable, reasoning that such clauses are appropriate tools for judges to use in fashioning support decrees.

**7.** Other jurisdictions recently have rejected escalating child support orders based on one or more of these defects. *See also, Dunne v. Dunne* (1986), 209 N.J.Super. 559, 507 A.2d 273; *Breen v. Breen* (1984), 99 App.Div.2d 539, 471 N.Y.S.2d 617; *Hood v. Hood* (1983), S.D., 335 N.W.2d 349; *Karim v. Karim* (1980), S.D., 290 N.W.2d 479; *Brevick v. Brevick* (1981), 129 Ariz. 51, 628 P.2d 599; *In re Marriage of Meeker* (1978), Iowa, 272 N.W.2d 455; *McDonald v. McDonald* (1971), Iowa, 183 N.W.2d 186.

Third, the support needs of a child are persistent and constant. We find this support order speculative and ambiguous. We are unable to apply its language in several potential circumstances.[8] What will Husband be required to pay if he earns $200.00 per week for 50 weeks of the year and then earns $10,000.00 in insurance commissions in each of the remaining 2 weeks to total $30,000.00 for the year? Merely $50.00 per week for 50 weeks and only $92.50 for 2 weeks to total yearly child support payments of $2,685.00 from an income of $30,000.00? Both the child and the custodial parent need to be assured of regular and minimally adequate support payments by the non-custodial parent. A sliding scale does not provide the needed stability in amounts of support to ensure that the child's needs are met consistently from week to week.

Fourth, because this self-adjusting child support order permits the amount of support to vary each week, the risks of uncertainty, possible evasiveness, and resulting litigation are substantially increased. The parties here did not request or agree to the provision fashioned by the trial court, and so this order is likely to encourage further animosity. Both administrative and enforcement problems are likely. If the dissolution parties, with a spirit of fairness and concern for their children, stipulate to a percentage of income or other escalating child support obligation by the non-custodial parent, the risks of yearly resistance to increased support and the attendant animosity and legal expense may be diminished. We express no opinion as to the validity or enforceability of such a child support order when based upon mutual agreement of the parties.

We reverse that portion of the dissolution decree providing self-adjusting escalating child support and remand for additional evidence of Erin's needs, if the parties wish to submit additional evidence, and to set a fixed amount of child support which will be adequate to meet Erin's needs.

**B. *Excessive Amount of Child Support***

Husband argues that the child support award of $50.00 to $92.50 per week is excessive. He maintains that the nature of his work and his present level of earnings at trial, $100.00 per week or $5,000 per year did not warrant a support order in excess of $25.00 per week, the amount on the court support schedule equal to net weekly earnings between $96.00 and $105.00. In a sense, this issue is moot on appeal because we are reversing and remanding to the trial court to set a fixed amount of child support. We note, however, that Husband's income is a matter of fact to be determined by the trial court. Husband argues on appeal that his income is below the poverty level—an argument we find untenable. The evidence showed Husband was self-employed as a health and safety consultant in 1982 and earned nearly $30,000.00. Husband's income as a self-employed insurance salesman from January through March 1983 totaled nearly $10,000. In the next eleven weeks, from April through late June 1983, Husband's self-employed earnings fell to about $1,100 total.

The trial court apparently placed much more emphasis on Husband's earning power in the 11 weeks immediately before trial, when Husband admitted he had a new job and it had been unsuccessful so he was seeking different employment, than on the previous 15 months during which Husband was earning a good income of $30,000 to $40,000 per year. The trial court should not be influenced by the temporary failure of Husband, who has been a good provider, to generate self-employed income immediately after separation and during dissolution proceedings. Husband earned nearly $30,000 in 1982, and his income during the first three months of 1983 clearly exceeded his 1982 income. His earning difficulties began in April 1983, immediately after the initial hearing and temporary support or-

8. Although it initially appears the support payments are based on weekly income, the order later requires monthly reports. This is another ambiguity in the order.

der, and just eleven weeks before the final dissolution hearing.

Had the trial court determined Husband's future yearly income was likely to be $5,000, as Husband claims, we think such a decision would be clearly erroneous. In any event, a fair amount of child support based on the evidence will undoubtedly be established on remand.

### C. Child as Beneficiary of Life Insurance Policy

The trial court entered the following order in regard to Husband's current group term life insurance policy providing death benefits of $2,000:

"8. Husband shall, within thirty (30) days herein, cause his current life insurance policy (IES) to be make primarily payable to (1) the parties' minor child who is subject to support, free of trust, or, (2) to a natural or state banking association trustee, or an individual trustee, under the provisions of a trust agreement, which, under its terms and conditions, shall provide that all of said life insurance proceeds and trust corpus and accumulated income thereof shall be used by event of Respondent's demise during such period of time when he is charged with any of said child's direct and indirect support, to the extent that social security payments allocable to the child's said support does not comply (by reason of insufficiency) with the latest Court ordered direct and indirect support provision."

Because a term life policy has no present cash value, Husband argues that it is not property subject to being set aside for child support payment under I.C. 31–1–11.5–12(c), which permits a court to "set apart such portion of the *property* of either parent or both parents, as may be necessary and proper for the support of the child." Husband contends that naming a child as beneficiary of a term life policy with no present cash value is analogous to awarding a spouse an interest in a pension in which there is no present, vested right to withdraw benefits, and since neither are "property", both are not permitted under our dissolution statute.

Wife argues that trial court orders that parents name children as beneficiaries of their life insurance policies have previously been upheld by this court as necessary and proper child support provision, relying on *Kirk v. Kirk* (1982), Ind.App., 434 N.E.2d 571 and *Allen v. Allen* (1985), Ind.App., 477 N.E.2d 104.

■ We agree with Husband that the threshold question, under our *marital property division* statute, is whether an asset has a present value or vested interest and therefore constitutes "property" to be placed in the "marital pot" subject to division. Both the language of our dissolution statute[9] and our cases on marital property division clearly establish the general rule that an asset in which there is no present or vested interest is not marital property which can be divided or awarded to the other spouse, but such assets may be considered by the trial court as a factor in making property distribution between spouses.[10] *McNevin v. McNevin* (1983),

---

**9.** I.C. 31–1–11.5–2(d) provides:

"The term property means all the assets of either party or both parties, including:
(1) A present right to withdraw pension or retirement benefits;
(2) The right to receive pension or retirement benefits that are not forfeited upon termination of employment, or that are vested, as that term is defined in Section 411 [26 U.S.C. § 411] of the Internal Revenue Code, but that are payable after the dissolution of marriage; and
(3) The right to receive disposable retired or retainer pay, as defined in 10 U.S.C. 1408(a),

acquired during the marriage, that is or may be payable after the dissolution of marriage."

**10.** *But see* I.C. 31–1–11.5–2(d)(3), above, recently amended to include retired or retainer military pay. Our previous cases, decided prior to the 1985 amendment, held that since military retirement benefit payments are contingent upon survival, such assets did not constitute a present vested interest and are therefore properly excluded from distribution. *Sadler v. Sadler* (1981), Ind.App., 428 N.E.2d 1305; *Metropolitan Life Insurance Co. v. Tallent* (1983), Ind.App., 445 N.E.2d 990. The Indiana Legislature has now expressly provided that retired or retainer

Ind.App., 444 N.E.2d 320; *Lord v. Lord* (1982), Ind.App., 443 N.E.2d 847; *Swinney v. Swinney* (1981), Ind.App., 419 N.E.2d 996; *McBride v. McBride* (1981), Ind.App., 427 N.E.2d 1148; *Cornett v. Cornett* (1980), Ind.App., 412 N.E.2d 1232; *Wilson v. Wilson* (1980), Ind.App., 409 N.E.2d 1169; *Irwin v. Irwin* (1980), Ind.App., 406 N.E.2d 317. Generally, where a person does not have a right to withdraw benefits, his entitlement falls outside the definition of property found in the marital property division section of our dissolution statute. *In re Harter* (Bankr.N.D.Ind.1985), 10 B.R. 272.[11]

However, neither the child support section of our statute nor our cases indicate that reasonable amounts paid for the *support of a child* are limited to "property" in which the parent has a present or vested interest. In making an initial child support determination, our statute requires the trial court to consider all relevant factors including the financial resources of both parents, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and mental condition of the child and his educational needs. I.C. 31–1–11.5–12(a). In addition, the trial court "may set apart such portion of the *property* of either parent or both parents, as may seem necessary and proper for the support of the child." I.C. 31–1–11.5–12(c).

▌ Unlike marital property division which is accomplished at dissolution based upon all of the property of both spouses existing at that time, child support is an ongoing responsibility which must, of necessity, extend to "property" in which the

parent has no present or vested interest at the time of the initial support order. Child support is *usually* paid out of the parents' future earnings. Both our statute and our case law permit a variety of provisions for child support that would be impermissible alimony if done on behalf of an ex-spouse.

This court in *Kirk v. Kirk, supra,* held in dissolution of marriage proceedings, the trial court did not err in ordering that both husband and wife keep in effect all their currently held life insurance policies with the parties' children named as sole beneficiaries, notwithstanding the husband's claim that such order was not a division of marital assets but rather a disposition of future earnings. The court stated:

"By including the life insurance provision in the Kirk's decree, the trial court clearly had the children's support and best interest in mind. Should something unforeseeable happen to either parent, the life insurance proceeds could be used as support for the children. Being in the nature of support, that arrangement could of course be modified under the same circumstances as any support award."

*Id.* at 574.

In a similar case, *Allen v. Allen, supra,* we found the trial court did not abuse its discretion in ordering father to make his daughter beneficiary of $250,000 in life insurance, where father maintained $450,000 in life insurance, he was 52 years old at time of trial and his daughter was nine months old, four of his five other children were emancipated and the fifth child aged 17 years lived with him. Allen argued that life insurance proceeds are not a marital

---

pay is included within the statutory definition of marital property.

**11.** Where a pension is not present or vested in that the retiree must survive in order to receive the next periodic payment and is not entitled to receive payment on demand, the pension is not marital property which can be divided or awarded to the other spouse. *Irwin v. Irwin, supra; Wilson v. Wilson, supra.* A personal injury claim against a spouse prior to divorce but which was not reduced to judgment at the time of final separation was not capable of

division at the time of dissolution and therefore was not marital property. *McNevin v. McNevin, supra.* A term life insurance policy through a spouse's place of employment which has no cash surrender value and is contingent on continued employment, is excluded from the statutory definition of marital property. *Metropolitan Life Insurance Company v. Tallent* (1983), Ind., 445 N.E.2d 990. Future earnings or income are not marital property capable of division between the parties. *Morgan v. Cooper* (1981), Ind.App., 415 N.E.2d 729.

asset subject to distribution. The court reasoned:

"We find this argument to be meritless for several reasons. In the first place, to the extent that the court ordered Lauren to be made the beneficiary of $250,000.00 worth of life insurance, the court was making a provision for child support—not a disposition of property. The effect is no different than if the court had ordered Allen to obtain a new policy in that amount for Lauren's benefit, a provision which, as we have already seen, is perfectly proper. To the extent that Allen has ownership rights in the policies which permit him to pledge them as security for debts, transfer or cash them or change beneficiaries, he has property which is subject to the court's authority under IC 31–1–11.5–12(c) as we noted above. Moreover, to the extend that such policies constituted a property right, including the cash value which the court found to be $25,000.00, the court could properly award ownership of the policies designated for Lauren's benefit to the wife." *Id.* at 107–8.

In both Kirk and Allen, to the extent that cash surrender values and dividends rendered the policies property interests, ownership of the policies was properly distributable to the custodial parent for the child's benefit.

█ In the case at bar, Husband has been ordered to name his daughter as sole beneficiary of his only life insurance policy or to set up a trust which will be used to comply with the court's support order in the event Husband dies before Erin is emancipated. The trial court is clearly making a provision for child support and not a disposition of marital assets. We find Husband's group term life insurance policy in the amount of $2,000 is one of his "financial resources" and is subject to the trial court's authority under I.C. 31–1–11.5–12(a). The trial court was within its discretion in ordering Husband to name his daughter sole beneficiary of his group term life insurance policy or to create a trust for her benefit should Husband die before his support obligation is fulfilled. That portion of the trial court's child support order is affirmed.[12]

## II. *Division of Net Marital Estate*

IND.CODE 31–1–11.5–11(b) contains five factors which a trial court must consider in making a "just and reasonable" division of marital property and provides as follows:

"(b) In an action pursuant to section 3(a) of this chapter, the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a *just and reasonable manner,* either by division of the property in kind, or by setting the same or parts thereof over to one (1) of the spouses and requiring either to pay such sum, either in gross or in installments, as may be just and proper, or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale. In determining what is just and reasonable, the court shall consider the following factors:

(1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as a homemaker.

(2) The extent to which the property was acquired by each spouse prior to

**12.** Arguably, this issue is of small consequence and subject to the maxim *de minimus non curat lex* because the group term life insurance policy has a low face amount ($2,000) and consequently a low premium. Erin was 16 years old at dissolution so the support provision will only be in effect for a few years before her emancipation. *De minimum non curat lex,* the law does not concern itself with trifles, was applied in

*Stanford v. Stanford* (1976), Ind.App., 352 N.E.2d 93, 94, n. 3 where the court held a complaint by a husband that several small items of unspecified value were not ordered returned to him should be ignored pursuant to the maxim. *See also, Geberin v. Geberin* (1977), Ind. App., 360 N.E.2d 41, 45, where the court refused to require the trial court to minutely divide an extensive household inventory at dissolution.

the marriage or through inheritance or gift.

(3) The economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

■■■ The statutory obligation to divide marital assets requires the trial court to consider division of both assets and liabilities. *Wells v. Wells* (1985), Ind.App., 489 N.E.2d 972; *In Re: Marriage of McDonald* (1981), Ind.App., 415 N.E.2d 72. The trial court may use its sound discretion in applying the five statutory factors to divide assets and liabilities so as to minimize the impact of any one factor. *In re Marriage of Rupp* (1983), Ind.App., 449 N.E.2d 1164. In arriving at just and reasonable property disposition in action for dissolution of marriage, the trial court need not affirmatively set out each statutory consideration affecting division and need not split the property equally. *Baker v. Baker* (1986), Ind.App., 488 N.E.2d 361. There is a strong presumption that the trial court considered the statutory factors and properly applied them in its division of marital assets. *Id.; In Re: Marriage of Patus* (1978), 175 Ind.App. 459, 372 N.E.2d 493. The party challenging the trial court's division of marital property bears the burden of overcoming this presumption. *Temple v. Temple* (1982), Ind.App., 435 N.E.2d 259. The trial court division of marital property is subject to reversal only for abuse of discretion, namely, where the result reached by the trial court is clearly against

the logic and effect of the facts and circumstances before the court including any reasonable inferences that may be drawn therefrom. *Id.*

Husband argues the trial court's division of marital property was not equal but rather was disproportionate. Husband relies heavily on this court's opinion in *Luedke v. Luedke* (1985), Ind.App., 476 N.E.2d 853, in which we established a rebuttable presumption of a "fifty-fifty" split with any variance to be supported by particular findings of fact where all other statutory factors were equal and the parties had maintained a role-divided marriage between breadwinner and homemaker. Our supreme court recently reversed this court's opinion and held that where one spouse is a primary wage earner whose income finances the acquisition of marital assets and the other spouse is a primary homemaker who earns no income, the statute governing disposition of property on dissolution does not require the trial judge to work from a rebuttable presumption of a "fifty-fifty" split, with any variance to be supported by particular findings of fact. *Luedke v. Luedke* (1985), Ind., 487 N.E.2d 133. Instead, division of marital property is placed within the discretion of the trial court.

■■■ Husband has failed to show an abuse of discretion by the trial court. Although Husband was the primary wage earner whose income financed acquisition of marital assets, Husband also has superior future earning ability. Wife continues to reside with both children and her future earnings are likely to be significantly less than Husband's. No evidence was offered regarding acquisition of property through inheritance or gift, or of dissipation of property. Under these circumstances, an award of 55% of net marital assets to Wife and 45% to Husband is not an abuse of discretion.[13] Trial court's division of marital property is affirmed.

---

13. The facts presented to us in this case are essentially the same as those in *Luedke.* Both wives were homemakers. Both husbands were primary wage earners whose income financed,

for all practical purposes, the acquisition of all marital assets. Both wives had significantly less future earning capacity. The value of the property was disputed and conflicting evidence re-

III. *Attorney Fees*

Husband argues that the trial court did not properly consider the resources of both parties, their economic conditions, their respective abilities to engage in gainful employment and to earn adequate income, or other factors relevant in determining the reasonableness of awarding to Wife all of her attorney fees. Husband emphasizes that he was in a very precarious financial position during the pendency of the action and at trial. Further, Husband asserts he was burdened with all of the parties' marital debts incurred prior to the date of separation, all of which were paid before the final hearing, including a $3,000 federal income tax obligation based upon Husband's 1982 earnings and his reporting practices and estimated payments.

 The trial court, in a dissolution proceeding, has full discretion to award any amount of attorney fees. *Luedke, supra*, 487 N.E.2d at 135. In determining award of attorney fees in an action under the dissolution statute, the trial court must consider the resources of the parties, their economic condition, and the ability of the parties to engage in gainful employment and to earn adequate income, and such other factors as may bear upon the reasonableness of the award. *Baker v. Baker* (1986), Ind.App., 488 N.E.2d 361; *Barnett v. Barnett* (1983), Ind.App., 447 N.E.2d 1172. An award of attorney fees will be disturbed only when a party demonstrates an abuse of discretion. *Luedke, supra; In Re: Marriage of Salas* (1983), Ind.App., 447 N.E.2d 1176. Therefore, this court will reverse a trial court only when an award of attorney fees is clearly against the logic and effect of the facts and circumstances before the court. *In Re: Marriage of Gray* (1981), Ind.App., 422 N.E.2d 696. The trial judge found a reasonable amount of attorney fees of Wife to be $2,025.00 and ordered Husband to pay $550 before

trial and $1,475.00 after trial. Husband paid $550 before trial.

At the time of the Hunter's dissolution trial, IND.CODE 31–1–11.5–16 governed the trial court's determination of award of attorney fees and provided as follows:

"The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name."

The evidence shows that Husband's income had been used throughout the marriage to pay household expenses because Wife was employed only part-time and earning minimal pay. At the time of trial, Wife was earning $5.00 per hour. Wife was awarded custody of the parties minor child and the parties' emancipated son also resided with Wife and made only minimal payment to her to defray the costs of his room and board. Husband would receive a pension at age 65. Wife had no pension. During the six months before trial, Husband had earned approximately $11,000 and Wife had earned about $2,200. Clearly, both Husband's actual income and his potential income are significantly greater than Wife's.

Husband was ordered to pay Wife's initial attorney fees of $550.00 and had, in fact, paid the entire amount before trial. After the final hearing, the provisional maintenance and support order of $175.00 per week would no longer be in effect, and Husband would no longer have this financial obligation while Wife's obligation would increase a corresponding amount.[14]

---

ceived on the property's value. However, no evidence was presented on *how* to divide the property between husband and wife.

**14.** *See Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240, where Husband's assertion that

increases in child support from the pendente lite order of $92.50 per week per child to $125.00 per week per child was illogical and contrary to the evidence was rebuffed by the appellate court because the pendente lite order was terminated by the final decree, the hus-

The decree awards substantial monies to Husband after liquidation of marital assets, and the trial court is permitted to consider the availability of these funds. *Morgan v. Cooper* (1981), Ind.App., 415 N.E.2d 729.

 Although Husband's income between the initial hearing and the trial had decreased dramatically, there was sufficient evidence to determine that Husband's future earning potential was clearly superior to Wife's, and the funds available to Husband in the future were also clearly superior. As a result, we find no abuse of discretion and affirm the trial court's order that Husband pay Wife's remaining attorney fees in the sum of $1,475.00.

## IV. *Date of Final Separation*

Husband argues that it was contrary to law and the evidence for the trial court to find the date of final separation of the parties as being February 4, 1983 when Wife filed petition for dissolution on February 22, 1983.

Husband relies on I.C. 31-1-11.5-11 which states, in pertinent part:

"(a) For purposes of this section, 'final separation' means the date of filing of the petition for dissolution of marriage under section 3 of this chapter."

Wife argues that this provision establishes the date regarding which property is determined to be in the marital estate but does not limit the trial court to that date alone in its distribution of property.

 The date of actual separation of the parties and the date of "final separation" each have a distinct legal significance. Here, the record indicates that after the parties actually separated on February 4, 1983, each was responsible for his or her own expenses, with the exception of the pendente lite child support and maintenance award paid by Husband to Wife. The parties' stipulated in the pretrial order that the date of separation was February 11, 1983. The date of "final separation",

as described in the marital property division section of our dissolution statute, refers to date upon which the trial court establishes the property which is included in the "marital pot" for division. The date the parties no longer resided together is a fact which the court can, in its discretion, consider in its just and reasonable division of property. The court is not bound to use the date of final separation. *Taylor v. Taylor* (1982), Ind., 436 N.E.2d 56.

 Husband has shown no facts which would indicate the order was in any way unfair or illogical. The trial court's date of February 4, 1983 is clearly within its permissible discretion under our dissolution statute and is affirmed.

Accordingly, for the reasons set forth, the Judgment for Dissolution of Marriage is affirmed in part and reversed in part and remanded to the trial court to gather additional evidence on Erin's needs and to set a fixed amount of child support which will be adequate to meet her needs.

CONOVER, P.J., and YOUNG, J., concur.

---

band's expenses decreased and the wife's increased correspondingly, and the parties respective incomes and manner in which the parties' lived prior to divorce made the decision a reasonable one. These factors are also appropriately considered by the trial court in awarding attorney fees.